Kathleen M. SHIRLEY, Administratrix of the Estate of Everett D. PECK, Deceased, Plaintiff and Appellant,

v.

STATE of North Dakota, Maurice O'Connell, Stanolind Oil and Gas Company, a corporation, and Lario Oil and Gas Company, a corporation, Defendants and Respondents.

No. 7800.

Supreme Court of North Dakota.

May 2, 1960.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for appellant.

Leslie R. Burgum, Atty. Gen., John E. Adams, Asst. Atty. Gen., for respondents.

SATHRE, Chief Justice.

This is an appeal from a judgment of the district court of Billings County, North Dakota, vesting title in the defendant the State of North Dakota to the following-described real property situated in Billings County, North Dakota, and described as follows:

All minerals of any nature whatsoever, including coal, iron, natural gas, and oil upon or in Lots 1, 2, 3, and 4, Section 2, Township 139, Range 101 west of the 5th Principal Meridian, together with the use of such of the surface necessary for exploring for mining or extracting and carrying away the same.

This action was brought by the plaintiff, Kathleen A. Shirley, as administratrix of the estate of Everett D. Peck, deceased, to quiet title in her as such administratrix to the said described real property.

There is no dispute as to the facts in the case. In 1916, Everett D. Peck became the owner of said described property including both surface and minerals. Thereafter, Peck and his wife executed a real estate mortgage upon said property to the Board of University and School Lands of the State of North Dakota to secure payment of a note in the sum of $600. The mortgage was due on or before the 1st day of December 1927. The mortgage contained the usual power of sale. The mortgage was recorded in the office of the Register of Deeds of Billings County, North Dakota, on June 12, 1916.

Thereafter, on September 17, 1925, E. D. Peck, a widower, conveyed said premises by warranty deed to Alex Abraham and Anna Abraham, his wife, excepting and reserving all minerals to himself, and warranting title free from encumbrance, except the mortgage of $600 to the State of North Dakota. This deed was recorded October 17, 1925, in the office of the Register of Deeds of Billings County, North Dakota. E. D. Peck, also known as Everett D. Peck, died in October 1927. No payment of either principal or interest on said mortgage had been made by any of the heirs of said Everett D. Peck after his decease. There are endorsements on the $600 mortgage note showing interest payments by Abraham as follows: December 10, 1928, $33.05 and $31.55; October 2, 1929, $31; and on December 22, 1930, $30. Upon application by Alex Abraham to the commissioner of the State Land Department, payment of the note for $600, secured by the mortgage executed by the Pecks, was extended to October 1, 1931. The letter granting the extension, Defendant's Exhibit 11, is dated April 1, 1931. On September 19, 1940, Alex Abraham and his wife executed a quitclaim deed to the State of North Dakota of all of their interest in the real property described herein, which deed was recorded September 24, 1940, in the office of the Register of Deeds, Billings County, North Dakota.

The deed contained the following stipulation: "It is agreed that the mortgage given to the State of North Dakota, now of record covering said premises, shall not merge with this conveyance, but may be foreclosed by second party at its option."

Thereafter, the State of North Dakota foreclosed said mortgage by advertisement and the notice of foreclosure was published in the "Billings County Pioneer" six times, the first publication being February 6, 1941, and the last publication on March 13, 1941. The date of the sale was March 20, 1941. At the sale, the property was bid in by the State of North Dakota and a sheriff's certificate of sale was issued by the sheriff to the State. The certificate of sale was duly recorded in the office of the Register of Deeds of Billings County, North Dakota, on March 25, 1941.

No redemption was made from the sale, and on March 23, 1942, the sheriff of Billings County executed and delivered to the State of North Dakota a sheriff's deed to the said described property pursuant to the foreclosure proceedings. The deed was recorded March 23, 1942, in the office of the Register of Deeds of Billings County, North Dakota.

In February 1954, the plaintiff, Kathleen M. Shirley, was appointed administratrix of the estate of Everett D. Peck, deceased, and she brought this action in July 1954. The defendant the State of North Dakota demurred to the complaint. Nothing further appears to have been done until May 1957, when by stipulation between the parties the plaintiff filed an amended complaint.

This action was originally brought against the State of North Dakota and three other defendants, among whom was one Maurice O'Connell; however, no service of the summons and complaint was ever made upon him and the action was dismissed as to the other two defendants. The action was tried with the State of North Dakota alone as defendant.

The amended complaint alleges that at the time of his death Everett D. Peck was the owner in fee simple of all of the minerals of any nature whatsoever, including coal, iron, natural gas, and oil upon or in the real estate described in the complaint, and that the plaintiff as his administratrix succeeded to his right, title, and interest and right of possession thereof.

The complaint further alleges that the defendant State of North Dakota claims title to the property described in the complaint by virtue of foreclosure of the mortgage executed to the State by said Everett D. Peck and wife; that said foreclosure proceedings were barred by the applicable statute of limitations and that the sheriff's certificate and sheriff's deed issued by virtue of said foreclosure proceedings are null and void and of no effect, and that no title was conveyed thereby to the defendant State of North Dakota.

The defendant State of North Dakota answered, admitting that it foreclosed the mortgage executed by Everett D. Peck and wife, and alleges that the foreclosure proceedings conducted by it were in all things valid. The answer further alleges that the cause of action, if any, of the plaintiff was barred by the statute of limitations, Section 28-0122, NDRC 1943 and that the title of the defendant State of North Dakota is valid in law.

Section 28-0122 provides:

"An action for relief not otherwise provided for must be commenced within ten years after the cause of action shall have accrued."

The case was tried in the district court of Billings County to the court without a jury, and on May 3, 1958, judgment was entered in favor of the defendant State of North Dakota, adjudging and decreeing that the title of the State of North Dakota to the real property described in the complaint is quieted as to all claims of the plaintiff or any person claiming under, by, through, or from the plaintiff.

The plaintiff appealed from the judgment and demanded a trial de novo.

The first and main contention of the plaintiff is that the foreclosure proceedings conducted by the State of North Dakota of the mortgage executed by Everett D. Peck were absolutely barred by the statute of limitations and are null and void, since such proceedings were not brought within ten years after the accrual of the cause of action.

The mortgage in question matured and the cause of action for foreclosure thereof accrued December 1, 1927. The foreclosure proceedings were commenced by advertisement in 1941, and sheriff's deed was issued to the State of North Dakota in 1942. The statute relied upon by the plaintiff as a bar to the foreclosure proceedings is Sec-

tion 7374, Compiled Laws of 1913 which provides that the following actions must be commenced within ten years after the cause of action has accrued:

"3. Any proceeding by advertisement or otherwise for the foreclosure of a mortgage upon real estate."

As pointed out, the foreclosure by advertisement was commenced by the publication of foreclosure notice the 6th day of February 1941. Since the cause of action for foreclosure of the mortgage involved herein accrued December 1, 1927, the ten year limitation statute had therefore run when the foreclosure proceedings were commenced by the State of North Dakota, unless the extension of the due date of the mortgage note granted to Abraham interrupted the running of the statute.

In 34 American Jurisprudence, Limitation of Actions, Section 353, page 275, it is stated:

"Inasmuch as a part payment, in order to remove the bar of the statute of limitations, must have the effect of an acknowledgment of the debt or a new promise, it is established that such payment, whether made before or after a debt is barred by the statute of limitations, does not toll the statute or revive the debt unless made by the debtor himself or someone having authority to make a new promise for the residue. In some jurisdictions, this rule has been incorporated into statutes which expressly require that a part payment shall be made by the party sought to be charged. It follows that a part payment is insufficient if made by a stranger, or by one who was not authorized to represent the debtor, and it has been held that a creditor cannot be made the agent of the debtor to such an extent as to make an act done by him operate as a new promise to himself."

In the case of In re Anderson's Estate, 148 Neb. 436, 27 N.W.2d 632, the Supreme Court of Nebraska quoted with approval the following statement found in 37 C.J. Limitation of Actions, Sec. 782, page 1252:

"In order to take a claim, otherwise barred, out of the statute by proof of part payment within the statutory period preceding the commencement of the action, there must be clear and positive evidence of the making of such a payment within the required time; that the payment was made on the claim in suit; that the intention was to make a part payment; and that the payment was made by the debtor or some one authorized to act for him." See also, 54 C.J.S. Limitations of Actions § 397.

■ It is clear therefore that in order to interrupt or suspend the operation of the statute of limitations, there must be clear proof of part payment or promise to pay by the debtor, or by one authorized by the debtor to make such payment.

As pointed out herein, no payments were made on the mortgage by Peck, his heirs, or by any person on his behalf after October 1927 the date of his death.

The Pecks were the original debtors and obligors on the note and mortgage involved here, and were therefore the parties to be charged. They had made no payments on the mortgage note since 1927. The interest payments made by Abraham were made without the knowledge or consent of the Pecks. The Pecks, as mortgagors had a remedy available to them under Section 8074, Compiled Laws of North Dakota of 1913. Under that statute they could have obtained an order from the district court enjoining the foreclosure proceedings and requiring the mortgagee to foreclose by action. The Pecks would then have had the right to answer and to plead the statute of limitations as a defense; but this they failed to do. They failed to take advantage of the remedy available to them and permitted the foreclosure proceedings to be carried out to final completion.

In the case of Scott & Wheeler v. District Court, 15 N.D. 259, 107 N.W. 61, 62, .this court had under consideration Section 5845 R.C. 1899, now Section 35–2204, ND RC 1943. We quote from the opinion:

"Section 5845, Rev.Codes of 1899, provides a summary proceeding by means of which the mortgagor and those claiming in privity with him may avail themselves of the limitation statute as a bar against the exercising of the power of sale."

"The effect of this law is to subject the mortgagee's right to exercise the power of sale to the right of the mortgagor to forever prevent that method of foreclosure, so as to enable the latter to plead and prove, in an action to foreclose, any defense or counterclaim he may have."

"The statutory bar was created because it was unsafe to permit litigation of the merits after ten years from the time the cause of action accrued. This reason is just as applicable to a mortgage containing a power of sale as to one without it. The fact that the statute plainly shows the intent of the Legislature that all disputed questions should be litigated in an action to foreclose also shows that it was the intent that the power should not be exercised (if the mortgagor objected) after the time limited for such litigation had expired."

■ Neither the mortgagors, their heirs, nor anyone in their behalf took any action under Section 35–2204, NDRC 1943 to restrain or enjoin the foreclosure proceedings. Since the defense of the statute of limitations can only be raised by answer and no answer having been made, the defense of the statute must be held to have been waived.

The plaintiff further contends that the foreclosure proceedings are defective in the following respects:

1. No notice before foreclosure was given as required by Section 35–2203, NDRC 1943.

2. The affidavit of publication was not correctly drawn, in that the affiant stated that he was "one of the employees or publisher" of the newspaper.

3. A copy of the affidavit of publication was not mailed to Everett D. Peck, or any of his successors, as required by Section 35–2217, NDRC 1943.

We shall consider the alleged defects in the order stated.

■ The first defect specified presents the question whether Section 35–2203, ND RC 1943 is retroactive or prospective in operation. If it is prospective only, it can have no application to foreclosure of a mortgage executed before the effective date of the statute. This identical question was considered by this court in the case of Patterson Land Co. v. Merchants Bank of Napoleon, 55 N.D. 90, 212 N.W. 512. In that case a real estate mortgage had been foreclosed, and it was stipulated that the foreclosure proceedings were in all things regular and valid, except for irregularity of service and substance of the notice of intention to foreclose. The mortgage in that case, as in the instant case, was executed before the enactment of the statute requiring service of such notice, and we held that the law was not retroactive and therefore did not apply to mortgages executed prior to its effective date. Upon the same ground we hold that said statute had no application to the foreclosure of the mortgage executed by E. D. Peck and wife to the State of North Dakota.

■ The second defect specified challenges the validity of the publisher's affidavit of publication of the notice of foreclosure. The affidavit states that it was made by "one of the employees or publisher", and is therefore sufficient under validating statute, Section 1–0505, NDRC 1943, which provides that no defense or

counterclaim shall be recognized in the courts of this State in any action for the foreclosure of a real estate mortgage had prior to January 1, 1943, "unless such action, defense, or counterclaim is upon grounds other than the following: * * *

"3. That the printer's affidavit of publication of the notice of mortgage foreclosure sale in connection with such foreclosure was made by an employee of the newspaper printing the notice, other than the printer, publisher, foreman, clerk, or bookkeeper of such newspaper; * * *"

The affidavit of publication states that the person making same "was one of the employees or publisher of said newspaper." Since the defect specified is not upon grounds other than the grounds specified in Section 1–0505, Subsection 3, NDRC 1943, supra, it is clear that the objection to the affidavit of publication is without merit.

The final defect specified is that a copy of the affidavit of publication was not mailed to the mortgagors, or any of their successors, by the Register of Deeds as required by Sec. 35–2217, NDRC 1943. This defect, if such, was cured by Section 35–2219, NDRC 1943 which provides that failure of the Register of Deeds to mail such notice "in no way shall invalidate the foreclosure proceedings nor affect the title to the property involved, but such failure shall render him liable in a civil action to the person entitled to a copy of the affidavit of publication herein described for any damage sustained by him by reason of such failure."

We have carefully considered the entire record, and, finding no reversible error therein, the judgment appealed from must be and is affirmed.

BURKE and MORRIS, JJ., concur.