RACHELLE BAUER HALVERSON, A MINOR, BY HER MOTHER AND NATURAL GUARDIAN, GENEVRA BAUER HALVERSON, AND ANOTHER v. KARL ROLVAAG AND ANOTHER.

165 N. W. (2d) 534.

February 21, 1969—No. 41291.

*Shanedling, Phillips, Gross & Aaron,* for appellants.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *David J. Byron,* Special Assistant Attorney General, for respondents.

NELSON, JUSTICE.

Appeal from a summary judgment of the District Court of Ramsey County in favor of defendants. The action involved is for compensation for the death of a Minnesota National Guardsman pursuant to Minn. St. 1961, § 192.39, and L. 1963, c. 854.[1]

On September 25, 1955, the guardsman, Lt. Gene C. Bauer, a member of a Minnesota Air National Guard Unit, then on active duty for training, was killed when an airplane he was piloting crashed at Holman Field, St. Paul. Lt. Bauer was survived by his wife, Genevra Bauer (now Genevra Bauer Halverson), and a minor dependent child, Rachelle Bauer (now Rachelle Bauer Halverson), plaintiffs herein. Rachelle was adopted by the Halversons January 10, 1962. Not until October 30, 1964, was plaintiffs' claim for compensation pursuant to § 192.39 served upon defendants. The claim was denied on the grounds that (1) it failed to exceed Federal benefits paid and payable which, pursuant to L. 1963, c. 854, § 1, must be deducted from the state benefits; and (2) it was partially barred by the statute of limitations. On January 12, 1965, this action was commenced in Ramsey County District Court.

The claim is founded upon the provisions of Minn. St. 1961, § 192.39, which read as follows:

"Compensation, payable quarterly, may be paid, under orders of the governor, to either the dependent widow, minor children, or parent of any member of the military forces who may die from disease contracted

---

[1] Minn. St. 1961, § 192.39, and L. 1963, c. 854, were repealed by L. 1965, c. 140, which established a new procedure for handling similar claims.

or injuries received or who may be killed while in active service. All claims for compensation under this section shall be acted on by the adjutant general. In all cases arising under this section, the amount allowed and the duration of the payment shall be that provided by the workmen's compensation law as now or hereafter in force based on the member's usual earnings in civil life. If there be no evidence of previous occupation or earnings, compensation shall be based on the member's earnings as a soldier."

It appears that after the death of Lt. Bauer, but before plaintiffs served their claim for compensation, the Minnesota Legislature enacted L. 1963, c. 854, effective May 23, 1963, which provided:

"Section 1. Minnesota Statutes 1961, Chapter 192, is amended by adding a new section to read:

"[192.391] Any payments made to a member of the national guard, his dependent widow, minor children or parent under any law of the United States of America arising out of the injury or death for which a claim for compensation is made against the state of Minnesota under Minnesota Statutes 1961, Sections 192.38 or 192.39, except payments under the federal social security act or the federal government life insurance program for members of the armed forces, shall be deducted from any payments made pursuant to said sections 192.38 or 192.39.

"Sec. 2. Section 1 applies to all claims past, present, and future arising under Minnesota Statutes 1961, Sections 192.38 or 192.39, except claims now pending before a court."

At the first trial of this action defendants conceded that at that time there was a potential state liability of $13,608.75. Defendants, however, contended that all state liability was removed by deduction of Federal benefits pursuant to L. 1963, c. 854. The district court, nevertheless, ordered summary judgment in favor of plaintiffs in the amount of $13,608.75, plus interest. The court in its memorandum indicated that it was of the view that no deduction of Federal benefits could be allowed for the reason that L. 1963, c. 854, could not be applied to claims based upon a death occurring before its enactment. Defendants appealed from the decision of the court below, Halverson v. Rolvaag, 274 Minn. 273,

143 N. W. (2d) 239, and this court reversed, stating (274 Minn. 276, 143 N. W. [2d] 242):

"* * * We hold that due process does not prevent the application of L. 1963, c. 854, to a claim based upon a death that preceded its enactment where, as here, no claim was made until after enactment and there is no showing that the decedent was induced by the existence of benefits under §§ 192.38 and 192.39 to either enter or continue membership in the Minnesota National Guard. This result does no violence to principles of justice and equity since the only effect of the application of L. 1963, c. 854, is to prevent double recovery."

At the second trial both parties moved for summary judgment, contending that there were no material facts in issue. The district court granted summary judgment in favor of defendants and plaintiffs now bring this appeal.

It appears from the record that at the second trial and upon this appeal the parties agree that the maximum total recovery from the state under the Workmen's Compensation Law in effect at the time of Lt. Bauer's death would be $17,500 and that the maximum weekly benefit would be $40. See, L. 1955, c. 615, §§ 7 and 8. The parties also agree that in the instant case maximum state liability is $15,900 because a claim of $1,600 of the $17,500 is barred by the running of the statute of limitations against any claim by Mrs. Halverson.

Pursuant to the decision of this court in Halverson v. Rolvaag, *supra*, the parties both recognized that L. 1963, c. 854, authorizing the deduction of Federal benefits, is applicable to a determination of plaintiffs' claim. The present dispute concerns which of several Federal benefits should be deducted to ascertain state liability. Defendants asserted successfully in the trial court that the following Federal benefits should be deducted from state liability:

"Death compensation paid to widow from death to remarriage (38 U. S. C. §§ 322, 341, 343). (Paid between September 25, 1955 and April 5, 1957.) ......................................$2,218.33

"Death compensation to daughter from April 26, 1957, to July 31, 1967 (38 U. S. C. §§ 322, 341, 343-413) ................ 8,481.76

"Death gratuity to widow (10 U. S. C. § 1475-8). (Paid January 25, 1956.) ................................... 2,052.72

"Prospective compensation to daughter to age eighteen (38 U. S. C. § 413) ..................................... 5,600.00

"Total deductions allowed by trial court .............. $18,352.81"

Defendants, in addition to the above-mentioned Federal benefits, asserted two other Federal benefits which they claimed should be deducted pursuant to L. 1963, c. 854. They were:

"Orphans educational benefits available between appellant's 18th and 23rd birthdays at $80.00 per month (38 U. S. C. § 413) $4,800.00

"Serviceman's Indemnity Benefits (P. L. 23-83) ........ 11,148.00"

It appears that the trial court found that because the allowable deductions exceeded state liability it was unnecessary to consider the effect of possible orphans' educational benefits. In its memorandum the court said:

"* * * As a matter of consistency, however, I feel that, were they material, they would be taken into consideration and be set off against any present claim, without prejudice to a claim's assertion should they be not availed of."

The trial court disallowed defendants' claim that servicemen's indemnity benefits in the amount of $11,148, which were paid to plaintiffs between September 26, 1955, and August 25, 1965, be deducted. The trial court found that these benefits were "payments under * * * the federal government life insurance program for members of the armed forces" and thus not deductible Federal benefits under L. 1963, c. 854, which excludes payments under the Federal government life insurance program.

■ The Federal benefits totaling $2,218.33 paid to the widow until her remarriage, and those paid to her as a death gratuity, totaling $2,052.72, are properly deducted from state liability under Minn. St. 1961, § 192.39, and L. 1963, c. 854. Plaintiffs contend that because these Federal benefits were paid to the widow rather than to plaintiff daughter they should not be deducted to ascertain state liability on the

daughter's claim. The explicit language of L. 1963, c. 854, clearly states that the Federal payments "to a member of the national guard, his dependent widow, minor children or parent under any law of the United States of America * * * shall be deducted from any payments made pursuant to said sections 192.38 or 192.39."

Plaintiffs in contending that payments made to the widow should not be deducted from the daughter's claim fail to recognize the clear directive of c. 854. They also fail to recognize that the state liability to any and all claimants of $17,500 is a statutory maximum. If a widow and a minor child made either separate or joint claims, it is clear that total state liability to both claimants could not exceed $17,500 and that total state liability to both claimants would be reduced by Federal benefits paid to either claimant. Thus, Minn. St. 1961, § 192.39, and L. 1963, c. 854, are not to be construed to limit Federal deductions when both the widow and dependent children receive Federal benefits but only one brings a claim for state benefits.

The argument by plaintiff daughter that because the widow's claim is barred by the statute of limitations so also should all set-off of Federal payments to the widow be barred is without merit. By invoking such a use of the statute of limitations plaintiff daughter seeks to obtain two objectives—first, to increase her recovery in the amount of $4,271.05, and, secondly, to subject defendants to greater liability than would be the case if the statute of limitations had not run.

■ After Mrs. Halverson remarried on April 5, 1957, plaintiff daughter began to receive benefits under 38 USCA, §§ 322, 341, 343, and 413. The benefits originally were in the amount of $67 per month. They were increased to $77 per month on August 26, 1965, and to $80 per month on January 1, 1967. Presently plaintiff daughter receives $80 per month and will continue to receive these benefits until May 31, 1973, her 18th birthday. Payments to her under these provisions of the Federal law amounted to $8,481.76 as of July 31, 1967, and will amount to an additional $5,600 by her 18th birthday. She contends that only the benefits received under these provisions prior to February 13, 1964, amounting to $5,510.75, are deductible. This contention was dismissed by the trial court with the following comment:

"The controlling statute [L. 1963, c. 854] sets no time limit on federal benefits—it merely militates against double recovery. See: Halverson v. Rolvaag, 274 Minn. 273, 143 N. W. (2d) 239. Hence, I find nothing significant about February 13, 1964—nor of any other date—in connection with disallowance of federal benefits received or receivable."

Of course, in order to ascertain which Federal benefits are to be deducted pursuant to L. 1963, c. 854, it is necessary to look to the language of the legislation itself, as well as the policy considerations recognized by this court in its earlier opinion and in earlier cases. L. 1963, c. 854, sets no time limitation on Federal benefits and in no way anticipates using a cut-off date for their deduction.

The court in Halverson v. Rolvaag, *supra*, stated that the only effect of the application of L. 1963, c. 854, is to prevent double recovery. An affirmance of the trial court's decision herein, of course, would have the effect of avoiding the double recovery plaintiffs seek.

In Stoecker v. Moeglein, 269 Minn. 19, 129 N. W. (2d) 793, a case wherein benefits were sought under the same provision of law, § 192.39, this court affirmed a district court order awarding judgment to plaintiff in the amount of $17,500 with no interest or penalty. The court in the Stoecker case refused to allow the deduction of any Federal benefits payable because, unlike the instant case, the action had been commenced prior to the adoption of L. 1963, c. 854. Nevertheless, in the Stoecker decision the court indicated that, in a case where Federal benefits are properly deductible, all Federal benefits paid and payable should be deducted.

Both in the Stoecker decision and in its prior decision in the instant case, this court has indicated that, for the purpose of avoiding double recovery, Federal benefits paid and payable must be deducted in cases where L. 1963, c. 854, is applicable. Nowhere in the language of the statute itself or in the foregoing opinions of this court is support found for plaintiffs' assertion that only those Federal benefits paid up to a certain point in time may be deducted. Since Lt. Bauer's death occurred while in a Federal duty status, with the result that his dependents have been or will be fully compensated by Federal benefits, the present claim for additional state benefits must fail.

Plaintiffs' argument to the contrary has been based upon three assertions: (1) That the position taken by defendants in the original appeal that state benefits under Minn. St. 1961, § 192.39, are not vested somehow negates the deduction of unvested Federal benefits; (2) that the deduction, even though not limited by statute, must somehow be limited if to not do so would eliminate all state liability; and (3) that if plaintiffs cannot successfully assert a cut-off date there will be no state liability. It appears, however, that in all three of plaintiffs' arguments they ignore the facts that as dependents of Lt. Bauer they have now received Federal benefits in one form or another totaling about $24,000 [2] and that the final total will exceed $29,000, possibly going as high as $34,000. Plaintiffs' arguments ignore the concept set forth in Halverson v. Rolvaag, *supra*, of avoiding double recovery.

■ The question of which Federal benefits are to be deducted does not depend on whether or not Federal benefits are vested. In the original appeal the "vested benefits" argument was made in the context of considering whether, in a case where the death of the serviceman occurred prior to the passage of L. 1963, c. 854, but where a claim for benefits had not been made at the time of passage of this statute, the legislature could constitutionally provide that state benefits could be reduced by the amount of Federal benefits to be received. Thus, the question settled in the first appeal in this matter was that plaintiffs' right to state compensation under Minn. St. 1961, § 192.39, was not a vested right and that the subsequent legislation could eliminate or reduce that right to compensation. This court stated (274 Minn. 275, 143 N. W. [2d] 241):

"The resolution of the due process question depends largely upon considerations of public policy. The term 'vested interest,' when used in the constitutional sense to describe the kind of interest that cannot be impaired by retroactive legislation, reflects a determination that justice and equity require that the interest be preserved.

\* \* \* \* \*

"\* \* \* This result does no violence to principles of justice and eq-

---

[2] This figure includes servicemen's indemnity benefits not allowed as a deduction by the trial court.

uity since the only effect of the application of L. 1963, c. 854, is to prevent double recovery."

Our legislature, in passing L. 1963, c. 854, did not provide that only vested Federal benefits should be deducted from maximum state liability. Therefore, the statute furnishes no support for plaintiffs' argument that the issue of "vested benefits" is the determinative factor in analyzing which Federal benefits are properly deductible in this action.

■ It is necessary at all times to have in mind that the state's liability in the instant case arises out of the services a National Guard member performs as an employee of the state, while the liability of the Federal Government arises out of services this same individual performs as an employee of the Federal Government. It is clear that if a Minnesota National Guardsman was killed while performing services solely for the state prior to L. 1965, c. 140, his dependents could look to the state for compensation under Minn. St. 1961, § 192.39, but under those circumstances they would not be entitled to Federal benefits as plaintiffs are in this case. In such a case, L. 1963, c. 854, would not bar the claim asserted under Minn. St. 1961, § 192.39. Therefore, it is only when we are presented with a case such as plaintiffs', where the dependents are compensated by the Federal Government because the death arose while in the Federal service, that L. 1963, c. 854, would operate to eliminate a claim asserted under Minn. St. 1961, § 192.39.

■ Our construction of the relationship between Minn. St. 1961, § 192.39, and L. 1963, c. 854, is the only construction which gives effect to the basic policy of avoiding double recovery. The trial court properly held the benefits heretofore discussed deductible. For the same reason, we think that the trial court properly found that, if material, orphans' educational benefits in the amount of $4,800 are deductible in ascertaining state liability.

The Federal benefits received in accordance with the provisions of the Servicemen's Indemnity Act of 1951, 65 Stat. 33, are not payments under the "federal government life insurance program for members of the armed forces." Thus, it is our view that these payments, if material, would also be properly deductible as Federal benefits, although the court

below held that they were life insurance and not deductible. The record indicates that the Servicemen's Indemnity Act of 1951 was passed as a portion of the same bill which contained the Insurance Act of 1951. The former provided for a gratuitous indemnity, the latter for insurance in the traditional sense. We therefore consider that the indemnity benefits, if material, would be properly deducted for the following reasons: (1) The provisions of the Servicemen's Indemnity Act and its legislative history make it clear that these benefits are a gratuitous indemnity and not insurance; (2) the indemnity act was never considered to be a part of the government insurance program during the time it was in force; and (3) the act was repealed in 1956, 70 Stat. 886, well before the passage of L. 1963, c. 854, and was therefore not contemplated as a part of the Federal Government life insurance program at the time L. 1963, c. 854, was enacted.[3]

It is our view that even though the trial court erroneously held that the servicemen's indemnity benefits paid herein were life insurance and thus not deductible its determination about their deductibility was not necessary to the decision and thus will not preclude its affirmance.

■ The trial court after determining that Federal benefits properly deductible under L. 1963, c. 854, outbalanced any potential liability of the state under Minn. St. 1961, § 192.39, held that plaintiffs' claims to interest on the liability of the state were no longer "germane." We agree. Liability for interest cannot be created by computations based upon a nonexistent liability. Since plaintiffs did not make a claim, commence an action, or serve any notice of claim prior to the passage of L. 1963, c. 854, no principal obligation was ever created on which interest could accrue.

---

[3] The legislative history of the Servicemen's Indemnity Act is found in 2 U. S. C. Congressional and Administrative Service, 82nd Cong. 1st Sess., p. 1387. In Senate Report No. 91 (p. 1387), the Committee on Finance reported that the bill's effect was to "authorize the payment by the Administrator of Veterans' Affairs of a gratuitous indemnity." The committee also reported that the effect of § 5 of the bill was to limit "the total liability of the Government to $10,000 in any case where an indemnified person also has Government insurance in force." (P. 1392.) In the summary of its report, the committee indicated that to some extent the bill "supersedes Government life insurance." (P. 1395.)

We therefore affirm the trial court's conclusion that the potential state liability in this action was completely eliminated by the deduction of allowable Federal benefits.

Affirmed.