**ELMO et al. v. JAMES. (No. 11351.)** *

(Court of Civil Appeals of Texas. Fort Worth. Jan. 30, 1926. Rehearing Denied March 6, 1926.)

**1. Action ⬤⟞1.**

An "action" is a judicial proceeding, either in law or equity, to obtain certain relief at hands of court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Action—Action at Law.]

**2. Action ⬤⟞1—Facts necessary to be alleged and proved to obtain relief sought, and on account of which action is instituted, constitute "cause of action."**

The facts necessary to be alleged and proved in order to obtain relief sought, and on account of which action is instituted, constitutes the "cause of action"; the facts and not the remedy, strictly speaking, constituting the "cause of action."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action.]

**3. Action ⬤⟞1—Right to institute and prosecute action to obtain relief sought is "right of action."**

The right to institute and prosecute the action to obtain the relief sought is the "right

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 5, 1926.

of action," and is given by the Constitution or statutes or by both.

[Ed. Note.—For other definitions,. see Words and Phrases, First and Second Series, Right of Action.]

**4. Limitation of actions ⊂⊃123—Running of limitation is interrupted by filing petition containing sufficient allegations of fact to identify transactions on which suit is based, coupled with allegations of denial by defendant of right claimed.**

Institution of suit by filing of petition which is insufficient as against general demurrer, but which contains sufficient allegations of fact to identify transaction on which suit is based, coupled with allegations of denial by defendant of right claimed by plaintiff thereunder interrupts running of limitations.

**5. Pleading ⊂⊃252(1)—If suit is founded on proper cause of action, described with such certainty as to apprise defendant thereof, amendment will relate back to date of commencement of suit.**

If suit is founded on proper cause of action, described therein with such certainty as to reasonably apprise defendant of the same, an amendment will relate back to date of commencement of. suit.

**6. Limitation of actions ⊂⊃127(9)—Amended petition against devisee on note seeking equitable lien against property held not to set up a new cause of action against which limitations could be pleaded (Rev. St. 1911, art. 5688).**

Where third amended petition alleged execution of note, payable upon maker's death, that he had died and left an estate which had come into defendant's possession as devisee, and that defendant refused to pay note, a fourth amended petition again alleging such facts and specifically describing properties received by defendant, and praying for an equitable lien thereon, *held* not to set up a new cause of action, against which the bar of the four-year statute of limitations (Rev. St. 1911, art. 5688) could be pleaded.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by Mrs. Nola Millican Elmo and husband against Mrs. Sallie James. From a judgment dismissing the suit, plaintiffs appeal. Reversed and remanded.

Mays & Mays, T. J. Powell, and R. C. Armstrong, Jr., all of Fort Worth, for appellants.

McLean, Scott & Sayers and W. W. Alcorn, all of Fort Worth, for appellee.

DUNKLIN, J. Mrs. Nola Elmo, joined by her husband, W. J. Elmo, filed her third amended original petition in this suit on July 23, 1924, against Mrs. Sallie James. According to allegations in that petition, the suit had been theretofore instituted in the name of Nola Millican, but that after its institution she had married W. J. Elmo, on October 24, 1924. Neither the original petition nor the second amended original petition appears in the transcript, nor is there any showing of the dates the same were filed, but the absence of such showing is immaterial, as appears from the questions hereinafter discussed.

In the third amended original petition, plaintiffs allege that heretofore, to wit, on. or about the 24th day of October, 1924 (evidently meaning 1914), for value received, R. L. James, now deceased, made, executed, and delivered to the plaintiff Nola Elmo, née Millican, his certain instrument in writing, whereby he promised and agreed that the said Nola Elmo should receive from his estate $10,000 at his death, together with interest thereon at the rate of 10 per cent. per annum; and that said instrument in writing was as follows:

"This is to certify that I owe Miss Nola Millican $10,000, paying 10 per cent. interest per annum, principal and unpaid interest to be paid out of my estate at my death.
                              "[Signed] R. L. James.
"Witnesses, Press James,
                    "T. P. Weatherred."

Plaintiff alleged that she was still the owner and holder of the obligation, and that no part of the indebtedness so contracted had been paid, except interest thereon, from October 20, 1914, up to the 20th day of October, 1919, and that there is now due and payable to the plaintiff the principal sum of $10,000 so loaned to R. L. James, with interest thereon at the rate of 10 per cent. per annum from and since the 20th day of October, 1919.

It was further alleged that R. L. James departed this life on the 20th day of March, 1920, leaving a last will and testament, which was duly probated in the county court of Tarrant county, Tex. It was further alleged that the defendant, Mrs. Sallie James, was the sole devisee and legatee under and by virtue of said will, and by its terms was vested with the power to hold, sell, and dispose of the property so devised to her, without any further action on the part of the probate court. Plaintiff further alleged that defendant, Sallie James, had accepted and taken possession of said estate under and by virtue of the terms of the said will, and, though often requested, had failed and refused and still fails and refuses to pay plaintiff the indebtedness evidenced by said promissory note so given by R. L. James.

It was further alleged that the instrument in writing set out above was kept by the plaintiff for about three years after its execution, and then turned over to R. L. James, deceased, for safe-keeping, since which time it has been in the possession of the defendant. It was further alleged that the instrument is now in the possession of the defend-

ant, or else lost or destroyed, and notice was given to the defendant in the pleading to produce the instrument in court upon the trial of the cause, or else oral testimony would be resorted to in order to prove its contents.

Upon those allegations, plaintiff prayed for a judgment against the defendant for the principal sum of $10,000, with interest thereon at the rate of 10 per cent. per annum from the 20th day of October, 1919.

Plaintiff's petition contained a further prayer for such other and further relief, general and special, as she might show herself entitled to either in law or in equity. .

On October 27, 1924, plaintiffs filed their fourth amended original petition, in which all the facts alleged in the third amended original petition were repeated. In addition to those facts, plaintiffs further alleged that the property belonging to the estate of R. L. James, deceased, and taken over by the defendant, is now of the reasonable value of $100,000, exclusive of all legal exemptions under the laws of the state of Texas. It was further alleged that all of the property belonging to the estate of R. L. James became the property of the defendant by virtue of the terms of the will, and by virtue of the provisions of the will, and defendant had power to hold, sell, and dispose of the same without any action in the probate court, and that thereby defendant became liable to pay plaintiff the sum of $10,000, with interest.

The fourth and fifth paragraphs of the fourth amended original petition read as follows: .

"(4) Plaintiffs alleged that the property so had and received by the said Sallie James as aforesaid, and all of the property so had and received by her, was and is described as follows: 101 acres of land, out of the J. Wilcox survey in Tarrant county, Tex., and being abstract No. 1728, certificate No. 18, tract No. 3, of the reasonable market value of $1,520; 81 acres of land out of the J. Wilcox survey in Tarrant county, Tex., abstract No. 1724, certificate 19, tract No. 2, of the reasonable market value of $1,210; the N. ½ of lot No. 5 B, 18 Patillo addition to the city of Fort Worth, in Tarrant county, Tex., of the reasonable market value of $10,000; lots 3 to 12, inclusive, and lots 14 to 24, inclusive, in block 232, North Fort Worth, in Tarrant county, Tex., of the reasonable market value of $2,100; lots 1 and 2 in block 6, city of Fort Worth, Tarrant county, Tex., of the value of $20,000; lot No. 11 in block No. 110, city of Fort Worth, in Tarrant county, Tex., of the value of $10,000; lot No. 5 in block G, Field-Hillside addition to the city of Fort Worth, in Tarrant county, Tex., of the value of $3,000; lot 11 in block 18, Union Depot addition to the city of Fort Worth in Tarrant county, Tex., of the value of $600; lot 10 in block 3, Carlock South addition to the city of Fort Worth, in Tarrant county, Tex., of the value of $1,400; lot 16 in block No. 8, Ellis addition to the city of Fort Worth, in Tarrant county, Tex., of the value of $100; lot 6 in block No. 1, Hyde Park addition to the city of Fort Worth, in Tarrant county, Tex., of the value of $300.

"(5) That said described property as aforesaid was the property and all of the property so had and held by the said R. L. James at the time of his death, and is the property and all of the property so had and received by the said Sallie James as aforesaid, and which property she has had and possessed since such time, and which she now holds and possesses."

Then follow allegations which are, in substance, that the estate of R. L. James had become liable to the payment of plaintiffs' claim, and that plaintiffs have a lien on the property for the payment of the same, that, though often requested, the defendant had refused to deliver to plaintiffs an amount of the property belonging to the estate sufficient to pay the debt, and had refused to pay the same, and that she is now asserting title to the property and denying to plaintiffs the right to have the same or any part thereof applied to the payment of their debt. Following those allegations, plaintiffs prayed for a decree of court establishing and foreclosing an equitable lien upon the property described for the satisfaction of the plaintiff's debt. .

In another count, and as an alternative prayer, it was alleged that, in the event it should be developed on the trial of the case that defendant had disposed of said property or that she has not in her possession a sufficient amount to pay plaintiffs' debt, such disposition should be held to be in fraud of plaintiffs' right, and by reason thereof that plaintiffs be given a personal judgment against the defendant for their debt, with interest and costs of suit, or for so much thereof as cannot be satisfied out of any portion of the property remaining undisposed of. Plaintiff's petition contained a further prayer "for such other and further relief, special or general, in law or in equity to which she may be justly entitled."

By special exception to the fourth amended original petition, the defendant presented the defense that said petition showed on its face a different cause of action from that formerly pleaded in plaintiffs' third amended original petition, and that said cause of action, as set up and pleaded in plaintiffs' fourth amended original petition, showed on its face that the same was barred by the four years' statute of limitation. That exception was sustained by the court, and, after plaintiffs had excepted to that ruling and had declined to amend, the suit was dismissed by the court.

The statute of four years' limitation is, in part, as follows:

Art. 5688. "There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"1. Actions for debt where the indebtedness

is evidenced by or founded upon any contract in writing."

In 1 Corpus Juris, beginning on page 924 and throughout several succeeding pages, many authorities are cited which give varying definitions as to what constitutes "an action" and "a cause of action," and on page 924 the following occurs:

"Many definitions of the term 'action' have been given by the courts. It has been defined as the legal demand of one's right, or rights; the lawful demand of one's right or rights; the lawful demand of one's rights in the form given by law; a demand of a right in a court of justice; the lawful demand of one's right in a court of justice; the legal and formal demand of one's rights from another person or party, made and insisted on in a court of justice; a claim made before a tribunal; an assertion in a court of justice of a right given by law; a demand or legal proceeding in a court of justice to secure one's rights; the prosecution of some demand in a court of justice."

And on page 935:

"The courts have found it very difficult to give any general definition of the phrase 'cause of action,' which would apply to all cases alike, although it has been said in effect that there is no legal expression, the meaning of which is more clearly apparent. The phrase is used in different senses, depending upon the subject to which it is applied, or the object which it is to subserve; and it is differently defined in the abstract and for particular purposes, as when used with reference to the pleadings by which the cause of action is alleged; but, in the absence of any words limiting or restricting its application, the term applies to all causes of action. A cause of action has been briefly defined as a claim which may be enforced; matter for which an action may be brought; the subject-matter of the controversy; the subject-matter upon which plaintiff grounds his right of recovery; the ground on which an action may be maintained or sustained; that which creates the necessity for bringing the action; the ground or reason for the action; the reason why the action is sought to be maintained.

"Many decisions, in somewhat varying language, treat the cause of action as consisting of the fact or facts which give rise to or authorize the maintenance of the action. They define a cause of action as being or consisting of the facts giving rise to the action; the fact or combination of facts which gives rise to a right of action; the situation or state of facts which entitles a party to sustain an action; the fact or facts that justify it or show the right to maintain it; the existence of those facts which give a party a right to judicial interference in his behalf, the statement of facts upon the happening or nonhappening of which plaintiff bases his action; the facts upon which plaintiff's right to sue is based, and upon which defendant's duty has arisen, coupled with the facts which constitute the latter's wrong; the entire set or entire state of facts that give rise to an enforceable claim; every fact necessary to the right to the relief prayed for; every fact which is material to be proved to entitle plaintiff to succeed or recover; every fact which it is necessary for plaintiff to prove, if trav-

ersed, in order to sustain his action; every fact a plaintiff is obliged to prove in order to obtain judgment; every fact which, if traversed, plaintiff must prove in order to obtain judgment; or conversely, every fact which defendant would have a right to traverse."

"There is a clear distinction between a cause of action and the remedy for its enforcement. The former arises, comes into existence, when there is an invasion of a legal right without justification or sufficient excuse." Scheuing v. State, 59 So. 160, 177 Ala. 162.

"A cause of action may be defined in general terms to be a legal right, invaded without justification or sufficient excuse. Upon such invasion a cause of action arises, which entitles the party injured to some relief, by the application of such remedies as the law may afford. But the cause of action, and the remedy sought, are entirely different matters. The one precedes and, it is true, gives rise to the other, but they are separate and distinct from each other, and are governed by different rules and principles." Emory v. Hazard Powder Co., 22 S. C. 476, 481 (53 Am. Rep. 730).

In Casady v. Casady, 88 P. 32, 31 Utah, 394, the following definition of "cause of action" by Mr. Pomeroy in his Code Remedies was quoted with approval:

"Every judicial action must therefore involve the following elements: A primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict; and, finally, the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the Codes of the several states. They are the legal cause or foundation whence the right of action springs, this right of action being identical with the 'remedial right' as designated in my analysis. In accordance with the principles of pleading adopted in the new American system, the existence of a legal right in an abstract form is never alleged by the plaintiff; but, instead thereof, the facts from which that right arises are set forth, and the right itself is inferred therefrom. The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right, and the defendant's corresponding primary duty, have arisen, together with the facts which constitute the defendant's delict or act of wrong. The cause of action thus defined is plainly different from the remedial right, and from the remedy or relief itself. The remedial right is the consequence, the secondary right, which springs into being from the breach of the plaintiff's primary right by the defendant's wrong, while the remedy is the consummation or satisfaction of this remedial right."

See, also an interesting discussion of what is meant by a "cause of action," with numerous citations of authorities by Mr. Chas. E.

Clark, in Yale Law Journal, vol. 33, No. 8, p. 817. (June, 1924), and in which. he points out that the often quoted definition of "cause of action" by Mr. Pomeroy has been frequently criticized by different courts as inaccurate, as applicable to all causes of action; some criticisms being that the definition is vague, and others that in probate and partition proceedings there is no showing of delict of another.

[1, 2] After a careful consideration of the question under consideration and the authorities bearing thereon, we have reached the following conclusion: An action is a judicial proceeding, either in law or in equity, to obtain certain relief at the hands of the court. The relief which the court awards is fixed by law or by the rules and principles of equity, and it springs from, depends upon, and is granted by reason of the fact which it is necessary to plead and prove as a basis therefor. If A has an enforceable contract against B, he is by law entitled to enforce its performance, and, if the contract is breached, such primary right in A and a violation thereof by B combined entitles A to relief, under the rules of law, and constitutes a cause of action. The same may be said of the denial by B of any other property right existing in A. In such cases the delict of B is one of the facts necessary to constitute the cause of action. But in proceedings to probate a will, or for partition of real estate, and other actions of like character, the element of delict of, or denial by, another of plaintiff's right to the relief sought, is not necessary to constitute the cause of action. The facts necessary to be alleged and proved in order to obtain the relief sought, and on account of which the action is instituted, logically constitute the cause of action. It frequently happens that different remedies arising out of the same facts are open to the complainant, any one of which he may elect to pursue. It therefore follows that the facts and not the remedy, strictly speaking, constitute the cause of action.

[3, 4] The right to institute and prosecute the action to obtain the relief sought is the right of action, and is given by the Constitution or statutes, or by both. It does not always happen that the right to institute the proceeding arises immediately upon the accrual of the cause of action. For illustration, a minor or person of unsound mind has not the right to institute in his own name a suit upon a cause of action in his favor, which has already accrued, and by articles 5684 and 5708, Rev. Statutes, it is expressly provided that the statutes of limitation do not begin to run against such persons and those laboring under other disabilities mentioned until such disabilities are removed. The right of action is therefore clearly distinguishable from the cause of action. It is well settled by the decisions of this state and in other jurisdictions, that, if a suit is instituted by the filing of a petition which is insufficient as against a general demurrer, but which contains sufficient allegations of fact to identify the transaction upon which the suit is based, coupled with allegations of denial by the defendant of the right claimed by the plaintiff thereunder, the running of the statutes of limitation is thereby interrupted. Thouvenin v. Lea, 26 Tex. 612; Lee v. Boutwell, 44 Tex. 151; Pope v. K. C., M. & O. Ry. Co., 207 S. W. 514, 109 Tex. 311; Fuller v. El Paso Times, 236 S. W. 455 (by the Commission of Appeals); Mann v. Mitchell (Tex. Civ. App.) 241 S. W. 715, and other decisions there cited.

[5] In Tarkinton v. Broussard, 51 Tex. 550, our Supreme Court said:

"Our statute provides that 'the pleadings in all suits may be amended under the direction of the court, and upon such terms as it may prescribe, at any time before the parties announce themselves ready for trial.' Paschal's Dig. art. 54. Though the petition may be subject to special or general demurrer, yet, under our practice, if the suit is founded upon a proper cause of action, described therein with such certainty as to reasonably apprise the defendant of the same, an amendment will relate back to the date of the commencement of the suit. It has been decided at the present term that such petition is sufficient to stop the running of the statute of limitations. Killebrew v. Stockdale, supra [51 Tex.] p. 529. A petition so defective as not to show that the court had jurisdiction even may be cured by amendment. Ward v. Lathrop, 11 Tex. 291; Evans v. Mills, 16 Tex. 199."

In Scoby v. Sweatt, 28 Tex. 713, the following was said:

"A petition should contain 'a full and clear statement of the cause of action.' If it do not, it is the province of an amendment to supply such defect. But it cannot be said, if the original petition is merely wanting either in the fullness or clearness of its statement of the cause of action, that the amendment curing such defect is the commencement of the suit. If it appear from the petition that the defendant is complained of for a valid cause of action, however defectively it may be presented, the statute of limitation in his favor will be stopped"—citing in support of that conclusion many earlier Texas decisions.

The leading authority cited by appellee to support the trial court's ruling sustaining the plea of limitation is Phœnix Lumber Co. v. Houston Water Co., 61 S. W. 707, 94 Tex. 456. That was a suit by the plaintiff Phœnix Lumber Company to recover of the Houston Water Company the value of certain property owned by the plaintiff which was destroyed by fire in the city of Houston, on account of the failure of the water company to furnish a sufficient supply of water to extinguish the fire. It was alleged that the defendant company had entered into an express contract with the city of Houston to furnish a water supply sufficient to extinguish fires which

might occur in the city where the plaintiff's property was located. It was further alleged that the defendant company also entered into an express contract with the M. T. Jones Lumber Company to furnish that company a sufficient amount of water to extinguish fires which might occur on its property, and that plaintiff had purchased from that company all of its property, including the right to a supply of water which the defendant had contracted to furnish to that company. Later, the plaintiff filed an amended petition, abandoning the former allegations of express contract, and in which it claimed damages by reason of the same fire, based upon an alleged implied contract with the M. T. Jones Lumber Company, and with plaintiff as its assignee, to exercise ordinary care to furnish a supply of water sufficient to extinguish the fire which destroyed plaintiff's property, and the failure of the defendant to perform that obligation. It was held that the amended petition set up a new cause of action, which was barred by the statute of limitation. In the opinion, the following was said by Justice Brown:

"In the abstract, a cause of action consists of 'the right claimed or wrong suffered by the plaintiff, on the one hand, and the duty or delict of the defendant on the other. Rodgers v. Mutual Endowment Association, 17 S. C. 410. When used with reference to the pleadings by which the cause of action is alleged, the phrase signifies 'the facts upon which the plaintiff's right to sue is based and upon which the defendant's duty has arisen, coupled with the facts which constitute the latter's wrong.' Hutchinson v. Ainsworth [15 P. 82] 73 Cal. 455 [2 Am. St. Rep. 823]; Veeder v. Baker, 83 N. Y. 160; Box v. Railway, 78 N. W. 696 [107 Iowa, 660]; Lee v. Boutwell, 44 Tex. 154. * * * Four tests are laid down by which to determine the identity of the causes of action: (1) Would a recovery, had upon the original, bar a recovery under the amended petition? (2) Would the same evidence support both of the pleadings? (3) Is the measure of damages the same in each case? (4) Are the allegations of each subject to the same defenses?"

The court then applied the second and fourth tests to determine whether or not a new cause of action had been set up by the amended petition, and sustained the plea because of the fact that proof of the alleged express contract would not sustain the allegation of an implied contract which involved the issue of whether or not the defendant used ordinary care to supply water in sufficient quantities for the purposes needed. Most of the authorities relied upon by appellee seem to have regarded the four tests mentioned in the case last cited as controlling, and principally by reason of the decision of the Supreme Court in that case. As noted already, while Justice Brown stated that those four tests were usually applied, yet only two of them, the second and fourth, were resorted to. It is our conclusion that the decision of the Supreme Court in that case upon the specific issues involved is not in conflict with the views expressed above as to what constitutes a cause of action, but that the same is in accord with those views, since in the original petition the fact relied on to show a right in the plaintiff was an express contract to furnish water, while that relied on in the amended petition was an implied contract on defendant's part to exercise ordinary care to furnish sufficient water to extinguish fires. We think that the second test, to wit, "Would the same evidence support both of the pleadings?" and the fourth test, to wit, "Are the allegations of each subject to the same defense?" and indeed the other two tests as well, if same are applicable, should be restricted in their application to the main facts upon which the relief claimed is based, and constituting the cause of action proper, including those added by amended pleadings which are expressly authorized by statute to be filed, and which additional facts supply any lack of allegation in the original complaint necessary to a full showing for the relief sought. We believe it would be unreasonable to construe the opinion in that case as overruling the many former decisions of the same court, holding that a petition insufficient- as against a general demurrer would interrupt the statute of limitation, if the cause of action be described therein with such certainty as to reasonably apprise the defendant of the same.

[6] The fourth amended petition filed by the plaintiffs in the present suit did not set up a new cause of action, but was merely an amplification of the facts constituting the cause of action theretofore alleged in the third petition. The promissory note executed by R. L. James in favor of the plaintiff, Mrs. Nola Elmo, and set out in both petitions, gave her the legal right to have the same paid out of property belonging to the estate of decedent at his death, according to its specific terms. The execution and delivery of that instrument, coupled with the further facts that the maker of the obligation had since died and had left an estate which had come into the possession of the defendant, was sufficient to show a right in plaintiff to such relief as the law gives under such circumstances, and those facts, in addition to the further fact that the right to that relief had been denied by the defendant who had taken over the property under a claim of right of ownership, constituted plaintiffs' cause of action.

While the third petition did not describe the property so taken over by the defendant, yet it was certainly sufficient in that respect as against a general demurrer, in the absence of a special exception requiring a better description. The personal judgment prayed for in that petition could not be granted, in the absence of an allegation and proof that the property coming into the hands of the defendant belonging to the estate of the de-

ceased had been disposed of by the defendant and the proceeds converted to her own use. Blinn v. McDonald, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931, 92 Tex. 604; Smith v. Patton (Tex. Com. App.) 241 S. W. 111. But that pertained only to plaintiffs' remedy for the cause of action alleged in that petition, and did not constitute the cause of action itself.

The facts alleged in the third petition which constituted a cause of action were again alleged in the fourth petition, with further allegations specifically describing the properties which constituted the estate owned by R. L. James, deceased, at the time of his death, and taken over by the defendant, and out of which deceased contracted payment should be made of the note sued on. By reason of the facts alleged in both petitions, plaintiffs were entitled to an equitable lien upon the property owned by the deceased at the time of his death to satisfy the debt evidenced by the promissory note. While that relief was not prayed for in the third petition, but was claimed for the first time in the fourth petition, it related to the remedy only, and was no part of plaintiffs' cause of action, by reason of which the remedy was sought.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded.