AEI, Appellant (Respondent),

v.

JDM, Appellee (Petitioner).

No. C–87–3.

Supreme Court of Wyoming.

July 22, 1988.

Mary B. Guthrie and Richard E. Dixon, Cheyenne, for appellant.

Oscar A. Hall, Rawlins, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and GRANT, District Judge.

CARDINE, Chief Justice.

This is a child custody dispute between a child's natural mother and his putative father. The district court determined that the putative father was the presumptive father of the child and that he was a fit and proper "parent" who should be awarded custody of the child. The court further found that the natural mother was a fit and proper parent who should be awarded liberal visitation rights. Appellant, the child's mother, seeks a reversal of the district court's custody order. Although she raises several issues on appeal, we find it necessary to address only the question of whether the district court erred in determining custody without first determining the issue of paternity in conformance with the formal procedures set out in the Wyoming version of the Uniform Parentage Act.

Appellant and appellee have known each other for at least seven years. They lived together intermittently from 1980 until May of 1983. One month after they broke up, appellant visited appellee at his mother's home and told him that she was pregnant and he was the father. When the child was born, appellant was living with her aunt in Rawlins, Wyoming. Appellee also lived in Rawlins, and he periodically visited the child. In April 1984, appellee and the child moved to Albuquerque, New Mexico. There was considerable conflict in the evidence concerning whether appellant or appellee's mother had primary custody of the child between 1984 and 1986. The trial court found that the evidence "seem[ed] to preponderate in favor of" the child being in the home of appellee's mother during this period of time.

In May 1986, appellant and appellee tried to renew their relationship. They lived together in Albuquerque until August of 1986, when appellee returned to Rawlins. The next month, appellant returned to Rawlins to retrieve her son and took him back to Albuquerque with her. On October 26, 1986, appellee went to Albuquerque, and the couple decided to resume their

relationship once again. They agreed that appellee would take the child to Rawlins where appellant would meet them in two weeks. Before the two weeks had passed, appellant and appellee, by telephone, broke up again. In late November 1986, appellant returned to Rawlins to pick up her son, and she was served with appellee's petition for custody.

The petition for custody was predicated upon the allegation that appellee was the child's father. In response, appellant filed an affidavit in which she stated that appellee was not the natural father of the child and that he had never acknowledged paternity. In her amended response to the petition, appellant asserted, as an affirmative defense, that appellee lacked standing to seek custody of the child because the paternity issue had not been adjudicated.

At a two-day hearing before the district court, the parties litigated the paternity issue as well as the issue of custody. The child was never made a party to the proceedings, and a guardian ad litem was not appointed to represent the child's interests. After the hearing, the court found that appellee was presumed to be the father of the child under § 14–2–102(a)(iv), W.S.1977, which provides:

"(a) A man is presumed to be the natural father of a child if:

\* \* \* \* \* \*

"(iv) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child."

The court further found that appellee was a fit and proper "parent" who should be awarded the care and custody of the child. Appellant contends that the custody order must be reversed because the proceedings did not conform to the requirements of the Wyoming parentage act, § 14–2–101, et seq. We agree.

■ The exclusive means of establishing the parent-child relationship between a child and his natural father is provided in the Wyoming parentage act. Section 14–2–101(b)(ii), W.S.1977. Section 14–2–106(a) of the act provides:

"The district court has jurisdiction of an action brought under W.S. 14–2–101 through 14–2–120. The action may be joined with an action for divorce, annulment, separate maintenance, support or any action affecting the parent and child relationship."

Section 14–2–113(a) provides:

"The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes."

Subsection (c) states:

"The judgment or order may contain any other provision directed against the appropriate party to the proceeding concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment or any other matter in the best interest of the child."

The parentage act contains strict procedural requirements. Among these requirements are a mandatory informal hearing before trial, § 14–2–108(a), W.S.1977; mandatory blood tests upon request of a party, § 14–2–109(a), W.S.1977; and mandatory recommendations for settlement, § 14–2–111, W.S.1977. Perhaps most importantly, the act also requires that

"[t]he child shall be made a party to the action. If he is a minor he shall be represented by his guardian or a guardian ad litem appointed by the court." Section 14–2–107, W.S.1977.

These formal procedural requirements were not followed in the present case. Appellee contends that they were unnecessary for two reasons. First, he argues that neither he nor appellant brought an action under the act. Second, he contends that a formal paternity action with its attendant procedural requirements was unnecessary because he was the child's presumptive father. We reject both arguments.

■ First, we conclude that the action was necessarily subject to the parentage act because it determined the existence of the parent and child relationship. In his petition, appellee alleged that he was the child's father. The paternity issue was

contested. At the conclusion of the proceedings, the court found that appellee was the child's "parent." Although the parties did not expressly refer to the parentage act in their pleadings, the action was one which determined that appellee was the child's father. Because the parentage act is the exclusive means of establishing this relationship, the action necessarily came within its purview.

Next, we cannot agree that the existence of a presumption of paternity obviates the procedural requirements of the act. The effect of the presumptions contained in § 14–2–102 is illustrated in various provisions of the act. One function is evidentiary. If a presumption is established, it may be rebutted only by clear and convincing evidence. Section 14–2–102(b), W.S.1977. Another function is to determine standing to bring an action under the act. Section 14–2–104(a) allows a presumptive father to bring an action to declare the existence or nonexistence of the father and child relationship. Yet another function of the presumptions is to determine who is entitled to notice of an action brought under the act. Section 14–2–107, W.S.1977. Nothing in the act, however, suggests that custody may be awarded on the basis of a presumption or that the act's extensive procedural requirements somehow disappear when a party alleges that he is a child's presumed father.

We hold that in a child custody case in which paternity is contested, a putative father cannot be awarded custody unless he establishes paternity in accordance with the Wyoming parentage act.

Reversed.