LC, Appellant (Plaintiff),

v.

**TL, L, and TJ, a Minor Child, Appellees (Defendants).**

**L and TL, Appellants (Defendants),**

v.

**LC, Appellee (Plaintiff).**

Nos. 93–135, 93–136.

Supreme Court of Wyoming.

March 15, 1994.

Dennis M. Grant, Cheyenne, for appellant.

Franklin D. Bayless, Bayless & Slater, Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

Appellant ("LC") brought this action, No. 93–135, against TL, her ex-husband ("L"), and TJ, TL's child, to establish his paternity to the child. The district court concluded that LC lacked standing to bring the action and dismissed his complaint with prejudice. LC appeals that decision. In a cross-appeal, No. 93–136, L and TL appeal the district court's denial of attorney fees.

We affirm the district court in both appeals.

LC raises the following issues:

Did the district court err in dismissing the appellant's complaint for paternity with prejudice?

Is the case rendered moot because of the amendment of Wyoming Statute § 14–2–104(c)?

Did the district court err in determining that the appellant had no standing to pursue paternity as a presumed father pursuant to Wyoming Statute § 14–2–102(a)(iv)?

Did the district court err in denying the appellant a hearing to establish paternity and thereby denying the appellant due process and equal protection under the United States and Wyoming Constitutions?

In their cross-appeal, L and TL present the following issue:

Whether the district court erred in failing to award attorney fees to [L] and [TL], appellants, as against [LC], appellee, based upon W.S. 14–2–114 authorizing a court to order reasonable fees of counsel in paternity proceedings and/or pursuant to Rule 11, Wyoming Rules of Civil Procedure authorizing a court to award attorney fees because the pleadings are not well grounded in fact or law and are interposed for an improper purpose.

■ Ostensibly, this case comes to us as a dismissal for lack of standing. However, the record does not reveal whether the action was dismissed under W.R.C.P. 12(b)(6) or 41. LC believes that the dismissal was under Rule 41. We do not agree. The dismissal could not have been pursuant to 41(a), since that applies only to voluntary dismissals. This clearly was not a voluntary dismissal.

Rule 41(b) applies where the plaintiff has failed to: prosecute his claim, comply with the rules of civil procedure, or show that he has a right to relief after he has presented his evidence in a trial before a judge without a jury, none of which is applicable in this case. This action, therefore, was not dismissed pursuant to Rule 41.

This case is properly characterized as a dismissal under W.R.C.P. 12(b)(6) because the district court dismissed based upon the parties' pleadings and memoranda with no fact finding or evidentiary hearing having been held. When a motion to dismiss is determined upon matters outside of the pleadings, it is automatically converted to a summary judgment motion. See *Stalkup v. State Dep't of Environmental Quality*, 838 P.2d 705, 708–09 (Wyo.1992); *Landmark, Inc. v. Stockmen's Bank & Trust Co.*, 680 P.2d 471, 474–75 (Wyo.1984). Here the district court considered matters outside of the pleadings and its decision, therefore, was a ruling under W.R.C.P. 56. Accordingly, we will use our well-established standard for summary judgment in our examination of this case.

## FACTS

L and TL were married July 9, 1982. From April 1984 to February 1987, L, who was in the Air Force, was stationed in England. However, in September 1986, TL and their two sons returned to the United States. LC and TL began an intimate relationship in November of 1986, during TL and L's marriage. L had a vasectomy in September of 1986. L returned to Wyoming and stayed with TL during December of 1986 and January 1987. On September 11, 1987, TL gave birth to TJ.

TL and L separated in April 1988 and remained separated until their divorce. After separating from L, TL moved into an apartment with LC, where she and her children, including TJ, lived. L and TL were divorced on January 9, 1989, and L was ordered to pay child support for TJ. During the time LC and TL lived together, LC held TJ out to the world as his own child by: letting TJ and TL live in his apartment rent free, supervising and caring for TJ, providing clothing and other items, and introducing TJ as his son to other persons.

On September 16, 1987, five days after the birth of TJ, LC filed a paternity action. The action was subsequently dismissed without prejudice. After his break-up with TL, LC filed this action on April 30, 1992. LC claimed he was a presumed father by virtue of his having held TJ out to the world as his own son and, therefore, he was entitled to blood and DNA tests to prove his claim. The district court did not hold an evidentiary hearing; instead a hearing was held on a motion to dismiss by TL and L. The court granted the motion and ordered LC's complaint be dismissed with prejudice. In Case No. 93–135, LC has appealed that decision to this court.

L and TL moved for attorney fees under W.R.C.P. 11 and W.S. 14–2–114 (Cum.Supp. 1993) because, they claimed, LC's suit was baseless. The district court denied their motion. They appeal that decision in Case No. 93–136.

## STANDARD OF REVIEW

Our standard for the review of a summary judgment has been articulated by this court many times:

Summary judgment is proper when no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Baros v. Wells,* 780 P.2d 341 (Wyo.1989); *Farr v. Link,* 746 P.2d 431 (Wyo.1987).

> "We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties."

*Wagner v. First Wyoming Bank, N.A. Laramie,* 784 P.2d 224, 226 (Wyo.1989) (citations omitted).

*Kilmer v. Citicorp Mortgage, Inc.,* 860 P.2d 1165, 1167 (Wyo.1993) (quoting *Husman, Inc. v. Triton Coal Co.,* 809 P.2d 796, 798–99 (Wyo.1991), *appeal after remand,* 846 P.2d 664 (Wyo.1993)).

## DISCUSSION

### I. CASE NO. 93–135

As a preliminary matter, we note that several of the paternity statutes located at W.S. 14–2–101 to 14–2–120 were amended after this action had commenced. LC asserts that the amendment to W.S. 14–2–104(c) (Cum.Supp.1993) confers standing on him, even though the amendment did not take effect until after the district court had entered its order. Since we conclude that LC had standing under the act before it was amended, we need not decide this question.

 The issue of standing is not complex. At common law a putative father could not bring a paternity action. *CSP v. DDC,* 842 P.2d 528, 531 (Wyo.1992); *State by Dep't of Family Servs. v. Jennings,* 818 P.2d 1149, 1150 (Wyo.1991). The statutory provisions

contained in W.S. 14–2–101 to 14–2–120 [1], the Wyoming Parentage Act, are the exclusive means for determining the paternity of a child and his natural father. *CSP*, at 531; *AEI v. JDM*, 758 P.2d 22, 23–4 (Wyo.1988). In *A v. X, Y, and Z*, 641 P.2d 1222 (Wyo. 1982), we held that A had no standing to bring a paternity action because he was not a presumed father under any of the three possibilities set out in W.S. 14–2–102. Our prior cases, therefore, require a putative father, as a prerequisite to standing, to show that he has a presumption under one of the three possibilities contained in § 14–2–102. *X, Y, and Z*, at 1223.

■ Assuming that the facts alleged by LC are true, W.S. 14–2–102(a)(iv) (1986) and our prior case law, clearly give LC standing to bring this action. W.S. 14–2–102(a)(iv) provides:

> (a) A man is presumed to be the natural father of a child if:
>
> \* \* \* \* \* \*
>
> (iv) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child.

We look at the facts alleged in the light most favorable to the party who opposed summary judgment. LC has alleged sufficient facts in his pleadings and through the affidavits of other persons to support his contention that he received TJ into his home and held the child out as his own. Therefore, we must conclude that LC is entitled to the presumption provided in W.S. 14–2–102(a)(iv). Furthermore, W.S. 14–2–104(b) (1986) provides that:

> [a]ny interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under W.S. 14–2–102(a)(iv).

Since LC is a presumed father of TJ, he has standing to maintain this action. *See A v. X, Y, and Z*, 641 P.2d at 1223.

Our finding that LC has standing does not end our inquiry. The district court based its dismissal on two alternative grounds contained in W.S. 14–2–102(b) (1986). The district provided in its order, the following:

> 4. It is not disputed that the Defendants, [L and TL] were married at the time [TJ] was conceived and born to [TL]. When the Defendants were divorced by this Court, on 9 January, 1989, under Docket 117, Number 53[,] [TJ] was determined by the divorce action to be a child of the marriage. Any presumption of the paternity of the child raised by [LC] is rebutted by W.S. § 14–2–102(b): "A presumption is rebutted by Court decree establishing paternity of the child by another man."
>
> 5. If the Court were to rely solely upon the presumption of paternity of the child in [L], as set out in § 14–2–102(a)(i), as against the presumption sought by [LC], the Court must also find that [L] is the father of [TJ], because the presumption which is "founded on the weightier considerations of policy and logic controls," § 14–2–102(b). \* \* \*
>
> 6. Under either of the alternatives set out above, [LC] lacks standing to bring this action, and the matter should be dismissed with prejudice.

While the district court's stated reason for dismissal was lack of standing, it is clear from the order that the court relied upon W.S. 14–2–102(b) as a basis of its decision. Standing "focuses upon whether a litigant is properly situated to assert an issue for judicial \* \* \* determination." *Schulthess v. Carollo*, 832 P.2d 552, 556–57 (Wyo.1992). As we have already noted, appellant had standing to bring a paternity action and was entitled to a presumption. Section 102(b), however, provides for a rebuttal of that presumption and for the resolution of conflicting presumptions and thus goes to the merits of appellant's claim. Regardless of how the district court may have framed its decision, we agree that § 14–2–102(b) is determinative of LC's claim.

■ In construing a statute, we look at the language of the statute to determine if it

---

1. LC raised retroactivity only in regards to W.S. 14–2–104(c) and its effect on his standing. Therefore any further reference to these statutes is to the version in force at the time LC filed his action on April 30, 1992.

is ambiguous. If the statute is "vague or uncertain and subject to varying interpretations," it is ambiguous. *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1043 (Wyo.1993). When a statute is ambiguous, we will resort to our rules of statutory construction. *Id.*, at 1044. If, however, the statute is unambiguous, we will not resort to the rules of statutory construction; instead we will apply the plain meaning of language contained in the statute. *Id.*, at 1043.

■ Wyoming Statute 14–2–102(b) provided:

> A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two (2) or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. A presumption is rebutted by a court decree establishing paternity of the child by another man.

LC asserts that the district court misapplied the statute. He insists that the language of § 14–2–102(b) requires an evidentiary hearing, which would include blood and DNA tests. LC argues that the phrases "an appropriate action," "by clear and convincing evidence" and "on the facts" mandate this conclusion.

We find the statute to be plain and unambiguous, and we reject LC's interpretation. The word "action" has a well-defined meaning in law. "An action is a legal demand of one's rights in a court of justice." 1A C.J.S. *Actions* § 2 (1985); *Elmo v. James*, 282 S.W. 835 (Tex.Civ.App.1926). Thus § 14–2–102(b) is referring to an "appropriate legal demand of one's rights," not to a hearing. The legislature knows how to write a hearing requirement into a statute. See W.S. 14–2–312 (Cum.Supp.1993) (hearing required before parent-child relationship can be terminated). Section 102(b) plainly means that when an appropriate action has been brought, a presumption can be rebutted by clear and convincing evidence.

Nor is the phrase "on the facts" a requirement for a hearing. "[O]n the facts" simply means based on the facts in the record at the time the ruling is made. For example, if the proceeding is a summary judgment motion, then the facts would be those derived from the pleadings and supporting or opposing memoranda. On the other hand, if a hearing was held, then the facts would include those adduced at the hearing. This portion of § 102(b) is a mechanism by which the court can resolve conflicting presumptions, and nothing in its language dictates that a blood or DNA test is a prerequisite to determining which presumption is "founded on the weightier considerations of policy and logic."

■ The district court held that even if LC had a presumption under § 14–2–102(a)(iv), the presumption of paternity in L was "founded on the weightier considerations of policy and logic." The district court determined that the State has an interest in protecting and preserving the family unit and that TJ has a right to legitimacy. LC asserts that the district court's reasoning is no longer valid because L and TL are divorced. Since they are divorced, LC argues, the State cannot possibly have any interest in preserving the family unit because it no longer exists.

The legislature in W.S. 14–2–102(b) has established a procedure for how and when a presumption can be rebutted. A presumption can only be rebutted by clear and convincing evidence. *AEI v. JDM*, 758 P.2d 22, 24 (Wyo.1988). The presumption of L's paternity of TJ is found in W.S. 14–2–102(a)(i) *(1986)*:

> (a) A man is presumed to be the natural father of a child if:
>
> > (i) He and the child's natural mother are or have been married to each other and the child is born during the marriage * * *.

The presumption of paternity in L has been established by clear and convincing evidence—it is undisputed that TJ was born during L and TL's marriage.

The legislature has also provided in § 102(b) the standard by which two conflicting presumptions are to be resolved. The presumption founded on the "weightier considerations of policy and logic controls."

This court has long recognized the strong state policy in legitimacy, which is difficult to overcome.

> [W]e note there is a strong policy against bastardy. *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, *reh'g denied*, 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989). In support of that policy, the Wyoming Legislature has enacted stringent provisions that tend to insure children born during wedlock will not be considered illegitimate. That presumption of paternity is sufficiently strong in certain instances to override even the fact of biological parenthood.

*Matter of Adoption of R.S.C.*, 837 P.2d 1089, 1093 (Wyo.1992). The presumption of legitimacy is one of the strongest in law. *Matter of Paternity of JRW*, 814 P.2d 1256, 1260 (Wyo.1991).

Recently we restated the rationale for this policy:

> We cited *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, *reh'g denied*, 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989), and we concluded that the presumption of legitimacy is actually a substantive rule of law based on an overriding social policy derived from the relationship of a presumed father and the child at the time of birth. We said, categorically:
>
>> Applying the reasoning in *Michael H.* to this case, if we grant the appellant the right to compel genetic testing, we effectively deny the children's protected interests in having their legitimacy presumed under the Act. The balance between the children's protected right not to be "bastardiz[ed]" outweighs the father's interest in ascertaining paternity more than two years after acknowledging the same.
>
> *JRW*, 814 P.2d at 1262 (citations omitted).

*Livingston v. Vanderiet*, 861 P.2d 549, 552 (Wyo.1993). See also *Peters v. Campbell*, 80 Wyo. 492, 505, 345 P.2d 234, 238–39 (Wyo. 1959).

We hold that the presumption of paternity in L is founded on the weightier considerations of policy and logic. Therefore, L's presumption controls, and the presumption of paternity in LC is rebutted. This state has made a policy choice in favor of legitimacy. That choice is based on social considerations of the family unit and the child, which go beyond the marriage itself. The result in this case effectuates that policy.

■ The district court also relied upon the divorce decree as an alternative ground for its decision. Section 14–2–102(b) provides that "[a] presumption is rebutted by a court decree establishing paternity of the child by another man." The statute provides here an additional basis for the court's decision dismissing appellant's claim.

■ Finally, LC raises due process and equal protection claims. Essentially LC argues that because the marriage between TL and L is defunct, the State's interest in preserving legitimacy has evaporated. Therefore, equal protection and due process requires that his claim be heard.

In *X, Y, and Z* we rejected a gender-based equal protection challenge to the paternity statutes by a man who was not a presumed father. *Id.*, 641 P.2d at 1226. In fact, we held that those statutes would survive a strict scrutiny analysis. *Id.* LC has failed to present us with any cogent argument that would cause us to reconsider our decision. LC's equal protection challenge, therefore, is without merit and we reject it.

This court has accepted and applied the decision of the United States Supreme Court in *Michael H. v. Gerald D.*, 491 U.S. 110, 109 C.St. 2333, 105 L.Ed.2d 91 (1989). *JRW*, 814 P.2d at 1262; *R.S.C.*, 837 P.2d at 1093. LC asserts that *Michael H.* supports his position because a majority of that Court, the concurring justice and the four dissenters, found that putative fathers do have due process rights. The plurality, which is the opinion of that Court, held that putative fathers do not have any procedural or substantive due process rights. *Michael H.*, 491 U.S. at 121, 127, 109 S.Ct. at 2341, 2344. It is irrelevant how one characterizes the holding in *Michael H.* because the State of Wyoming has provided putative fathers with due process rights by enacting the statutes found at §§ 14–2–101 to –120. Thus whatever due process

rights a putative father has are found in those statutes. Since the presumption of paternity in LC was rebutted pursuant to those statutes, LC has received whatever due process he was entitled to under the statute.

## II. CASE NO. 93–136

In this appeal, L and TL contest the district court's denial of their motion for attorney fees. L and TL assert that the district court should have granted attorney fees under either W.R.C.P. 11 or W.S. 14–2–114 (Cum.Supp.1993). L and TL's claim rests upon their contention that LC's action was frivolous and it was filed for an improper purpose—harassment.

> Rule 11 provides in relevant part:
> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record[.] * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include * * * a reasonable attorney's fee.

L and TL assert that a de novo appellate standard should be adopted by this court when reviewing district court decisions under Rule 11.

This court has, in the past, applied an abuse of discretion standard when reviewing district court sanctions under Rule 11. *Rodgers v. Rodgers,* 627 P.2d 1381, 1383 (Wyo.1981). The federal courts also utilize an abuse of discretion standard when reviewing lower court rulings under the similar F.R.C.P. 11. *See Cooter & Gell v. Hartmarx*

*Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). L and TL have failed to present us with an argument that would persuade us to deviate from our established standard. Therefore, we decline to do so, and we review for an abuse of discretion.

> A court does not abuse its discretion unless it[ ] act[s] in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.

*Rodgers,* at 1383 (quoting *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980)). The district court did not give any reasons for its denial of the motion for attorney fees. However, we find that the district court could reasonably have concluded that L and TL were not entitled to attorney fees. LC presented enough evidence to show that he at least had an arguable claim and that it was not frivolous. Also, L and TL have made broad accusations that LC's action was interposed for an improper purpose. L and TL have not cited us to any evidence in the record supporting those claims; therefore we do not consider them.

L and TL also claim attorney fees under W.S. 14–2–114, which provides:

> The court may order reasonable fees of counsel, experts and the child's guardian ad litem, and other costs of the action and pretrial proceedings including genetic tests, to be paid by the parties in proportions and at times determined by the court.

A denial or award of attorney fees pursuant to § 114 is reviewed for an abuse of discretion. The same analysis we used in reviewing the Rule 11 claim applies here because the standard is the same. Consequently, there was no abuse of discretion by the district court in denying L and TL attorney fees under § 14–2–114.

## CONCLUSION

This state has a strong policy in favor of legitimacy that goes beyond the marriage.

In applying that policy, we conclude that the presumption in favor of L rebuts the presumption in LC because it is founded on the weightier considerations of policy and logic. We also find that the district court did not abuse its discretion when it denied attorney fees to L and TL. The district court's decision is affirmed in all respects.