In re the Marriage of Corrine Marie REYNOLDS, petitioner, Respondent,

v.

Michael R. REYNOLDS, Respondent,

v.

COUNTY OF NICOLLET, intervenor, Appellant,

v.

Patrick SULLIVAN, third-party respondent, Respondent,

Jim Sullivan, third-party respondent, Respondent.

No. C8–89–1618.

Supreme Court of Minnesota.

July 20, 1990.

Michael K. Riley, Asst. County Atty., St. Peter, for appellant.

Walter J. Gates, III, Regan, Kunard, Barnett & Kakeldey, Ltd., Mankato, for Michael Reynolds.

Corrine M. Reynolds, North Mankato, pro se.

Jay P. Yunek, Erickson, Zirke, Kuderer, Madsen & Wollschlager, P.A., Fairmont, for Patrick Sullivan.

Leif P. Carlson, Mankato, for Jim Sullivan.

James W. Brandt, St. Peter, Guardian Ad Litem.

POPOVICH, Chief Justice.

We agreed to review the decision of the court of appeals in this matter for the limited purpose of making it clear that one of the issues decided by the court of appeals against respondent Michael R. Reynolds was previously finally adjudicated in Reynolds' favor vis-à-vis Nicollet County and was not properly before the court of appeals for decision on this appeal.

This action began in 1984 as a proceeding brought by Corrine M. Reynolds to dissolve her marriage to defendant Michael R. Reynolds. Her petition for dissolution named as issue of the marriage the two children born during the marriage. In his answer, however, Michael denied he is the biological father of the children. It appears Michael had a vasectomy in 1972 before marrying Corrine and tests in 1984 confirmed the vasectomy had been successful.

In its temporary order, the trial court required Michael to deposit certain sums of money in the Nicollet County Social Welfare Fund each month, stating that if Michael was later found not to be under any duty of support the money would be refunded to him, whereas if he was found to be obligated the county could keep the money. Corrine then acknowledged Michael is not the biological father of the children and claimed the father of the first child is Patrick Sullivan and the father of the second is Patrick's brother, Jim Sullivan.

The trial court invited Nicollet County to intervene. Nicollet County did so and filed a complaint against Michael and against the Sullivan brothers. The complaint alleged the Sullivans were the two biological fathers of the children and Michael had conspired with them to force Corrine to have sexual relations with them because he, Michael, wanted to have children with her. The trial court issued an order for partial judgment in 1986, dissolving the marriage but reserving for future determination the issues of paternity and child support.

Blood tests taken subsequently showed there is no possibility that Michael is the biological father of the children. Michael thereafter moved for an order terminating support payments and returning all support payments then held in escrow. The trial court, in its memorandum accompanying the order denying the motion, said a trial was needed to determine whether Michael was estopped from denying that he is the father for support purposes on the ground that he agreed with Corrine to have her be impregnated by a third person on both occasions. The court said that if the evidence established that Michael did not join in the decision to participate in two adulterous liaisons and if the Sullivans were the fathers of the children, then Michael "should be off the hook." The court added it did not think the three-year statute of limitations for an action to declare the nonexistence of a father-child relationship, Minn.Stat. § 257.57, subd. 1(b) (Supp.1989), applied because Michael was not bringing a separate action but was simply interposing the defense of nonpaternity in the dissolution and support matter initiated by Corrine.

Subsequently, in early 1989, the trial court granted Michael's motion for summary judgment that he owes no duty of support to the children. The court concluded the three-year statute of limitations on an action to declare nonpaternity did not bar Michael from claiming nonpaternity in defense to someone else's action against him. The court added that if there was such a bar it would be against public policy because in cases where a married woman becomes pregnant by someone other than her husband it would encourage the husband to commence either an action to dissolve the marriage or an action to declare himself not to be the father. The court addressed the estoppel claim by saying Corrine's deposition fell short of establishing estoppel and therefore summary judgment on the issue was appropriate. The effect of the decision was to terminate the

county's claim for reimbursement against Michael and to allow the county's action against the Sullivans to continue. The county appealed but the appeal was dismissed by the court of appeals because the county failed to file a timely notice of appeal.

Thereafter, the county moved for an order appointing a guardian ad litem for the children and an attorney for them so that their rights could be represented in the matter and for an order requiring further blood testing of the children, the mother, and the Sullivans. Michael moved for an order turning over the money paid in escrow. The court granted Michael's motion, denied the motion for the appointment of a guardian ad litem and an attorney, and ordered additional blood testing.

The county appealed the order denying the appointment of a guardian for the children, and discussed *only* that issue in its brief. Michael chose not to respond. The court of appeals ruled not only that the trial court erred in denying the motion for the appointment of a guardian—relying on *Johnson v. Hunter*, 447 N.W.2d 871, 874–75 (Minn.1989), in so ruling—but also ruled that the statute of limitations barred Michael from claiming nonpaternity in the dissolution and support action. *Reynolds v. Reynolds*, 454 N.W.2d 271, 274–75 (Minn.App.1990).

 As we said, we granted Michael's petition for review for the limited purpose of reversing the court of appeals' decision on the statute of limitations issue. The general rule is that the statute of limitations may be used as a shield, not as a sword, and that the statute of limitations does not bar a party from raising a *pure defense*. Minnesota case law is in accord. *See, e.g., Household Fin. Corp. v. Pugh*, 288 N.W.2d 701, 703–04 (Minn.1980); *Halverson v. Rolvaag*, 282 Minn. 464, 470–71, 165 N.W.2d 534, 540 (1969); *C. Aultman & Co. v. Torrey*, 55 Minn. 492, 493–94, 57 N.W. 211, 211–12 (1893). Indeed, in *State, Douglas County ex rel. Ward v. Carlson*, 409 N.W.2d 490, 493 (Minn.1987), we said, "Even if the right to bring an action for a declaration of the nonexistence of the fa-

ther and child relationship presumed under section 257.55, subd. 1, clause (a), (b), or (c) has been foreclosed by the lapse of time, nothing in the Parentage Act either precludes a presumed father from denying paternity or obstructs the disclosure of the true facts of parentage." More to the point, however, the statute of limitations issue was not even raised by the county in its appeal and, as between the county and Michael at least, the issue was finally decided in Michael's favor when the court of appeals dismissed the county's first appeal as untimely.

As between Michael and the county, the statute of limitations issue has been finally adjudicated in Michael's favor. Accordingly, we reverse the court of appeals' ruling that the statute of limitations barred defendant from claiming nonpaternity in the dissolution and support action.

Affirmed in part; reversed in part; remanded to trial court for further proceedings.