**In the Interest of K.B. (DOB: June 7, 1976).**

**K.B., Richard Stewart, Guardian ad Litem for K.B., Walsh County Social Service Board, Assignee for A.B., and A.B., Plaintiffs and Appellants,**

v.

**G.M. (DOB: 2/7/47), Defendant and Appellee.**

**Civ. No. 920049.**

Supreme Court of North Dakota.

Oct. 1, 1992.

Sonja Clapp (argued), Asst. State's Atty., Grand Forks, for plaintiffs and appellants.

Nicholas B. Hall (argued) of DePuy, Kopperud & Hall, Ltd., Grafton, for defendant and appellee.

ERICKSTAD, Chief Justice.

K.B. [ "Kim" ], A.B. [ "Ann" ], the Walsh County Social Service Board, and Richard Stewart as Kim's guardian ad litem appeal from a district court summary judgment dismissing their paternity action against G.M. [ "Gary" ]. We reverse and remand for further proceedings.[1]

In 1972 Ann married R.B. [ "Robert" ]. Kim was born in 1976. Ann and Robert divorced in 1981, and Ann was awarded custody of Kim.

In 1989 the director of the Social Service Board, as assignee of Ann's right to collect support, brought an action against Robert, presumably to collect child support,[2] in which the issue of paternity was raised. Genetic testing established that Robert is not Kim's biological father. On June 30, 1989, the district court entered findings of fact, conclusions of law, and an order determining that Robert is not Kim's father. On July 11, 1989, an amended divorce judgment was entered canceling Robert's support obligation. No appeal was taken from the order or judgment.

After learning that Robert was not Kim's biological father, Ann, in an interview with the regional child support unit, identified Gary as Kim's father. Kim, Ann, the Social Service Board, and Kim's guardian ad litem commenced this action, alleging that Gary is Kim's biological father. Gary responded with a motion for summary judgment, asserting that, by statute, Robert is Kim's presumed father and that the time limitations under Chapter 14–17, N.D.C.C., precluded the court from declaring Robert's non-paternity in the 1989 action. The district court, concluding that it had erred in decreeing that Robert is not Kim's father, entered summary judgment dismissing the action against Gary. Kim, Ann, the Social Service Board, and Kim's guardian ad litem appealed.

Under Section 14–17–04(1)(a), N.D.C.C., a man is presumed to be the natural father

---

1. The names in brackets in this opinion are pseudonyms.

2. The record on appeal does not include the pleadings from the 1989 action, so the precise nature of that action is somewhat unclear. It appears, however, that Robert alleged non-paternity as a defense to that action.

of a child if he is married to the child's mother at the time of the child's birth. Section 14–17–05(1)(b), N.D.C.C., prescribes time limits for bringing an action to challenge the presumption of paternity:

"*Determination of father and child relationship—Who may bring action—When action may be brought.*

"1. A child, his natural mother, or a man presumed to be his father under subdivision a, b, or c of subsection 1 of section 14–17–04, may bring an action:

\* \* \* \* \* \*

"b. For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision a, b, or c of subsection 1 of section 14–17–04 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, *but in no event later than five years after the child's birth.* After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party." [Emphasis added].

■ Section 14–17–05(1)(b), which is our codification of Section 6(a)(2) of the Uniform Parentage Act [U.P.A.], is a statute of limitations. *See, e.g., People in Interest of L.J.,* 835 P.2d 1265, 1267 (Colo.Ct.App. 1992); *Reynolds v. Reynolds,* 458 N.W.2d 103, 104–105 (Minn.1990); *Clay v. Clay,* 397 N.W.2d 571, 576 (Minn.Ct.App.1986). A statute of limitations acts only to bar the bringing of the specified action, and does not extinguish the claim or affect remedies other than the one to which it applies. *Guthmiller v. North Dakota Department of Human Services,* 421 N.W.2d 469, 471, 473 (N.D.1988); *Larson v. Quanrud, Brink & Reibold,* 78 N.D. 70, 47 N.W.2d 743, 750 (1950).

Under similar circumstances, the Colorado Court of Appeals has held that its codification of U.P.A. § 6(a)(2) [Colo.Rev.Stat. § 19–4–107(1)(b) ] does not prevent a presumed father from challenging the presumption of paternity in a child support collection action brought more than five years after the child's birth. *People in*

*Interest of L.J., supra,* 835 P.2d at 1266. The court relied upon *People in Interest of R.T.L.,* 780 P.2d 508, 514 (Colo.1989), in which the Supreme Court of Colorado construed the same statute:

"Nowhere does the statute limit the time within which a presumed father may assert as a defense the nonexistence of the father and child relationship. Consequently, this case falls squarely within the general rule 'that a statute of limitations, although barring the use of a claim for affirmative relief after the limitations period has run, is not a bar to asserting that claim as a defense.' *Dawe v. Merchants Mortgage and Trust Corp.,* 683 P.2d 796, 800 (Colo.1984). . . ."

The Supreme Court of Minnesota has similarly construed its codification of U.P.A. § 6 [Minn.Stat.Ann. § 257.57]:

"[T]he right to deny paternity defensively, whether asserted to rebut a presumption of paternity or simply to defend against an allegation of paternity where there is no presumed father, is not subject to time limitations and may be exercised by the defendant in any action in which it is alleged that he is the child's father."

*State of Georgia ex rel. Brooks v. Braswell,* 474 N.W.2d 346, 350 (Minn.1991); *see also Reynolds v. Reynolds, supra,* 458 N.W.2d at 105; *State ex rel. Ward v. Carlson,* 409 N.W.2d 490, 493 (Minn.1987).

■ Section 14–17–05(1)(b), N.D.C.C., creates a statutory cause of action to rebut the presumption of paternity. The five-year limitation period for bringing such an action does not, however, limit the defenses available to the presumed father in other actions. Consequently, the five-year statute of limitations of Section 14–17–05(1)(b), N.D.C.C., did not preclude Robert's assertion of non-paternity as a defense in the 1989 proceeding.

■ Furthermore, a statute of limitations in a civil proceeding is an affirmative defense. *McCarter v. Pomeroy,* 466 N.W.2d 562, 566 (N.D.1991); Rule 8(c), N.D.R.Civ.P. Affirmative defenses are waived if not pleaded. *Northwestern Fed-*

eral *Savings and Loan Association of Fargo v. Biby*, 418 N.W.2d 786, 787 (N.D. 1988); *Shirley v. State*, 103 N.W.2d 103, 108 (N.D.1960). In this case, no party raised the five-year statute of limitations under Section 14–17–05(1)(b), N.D.C.C., as a defense in the 1989 proceeding. Accordingly, the defense was waived, and the district court did not err in holding that Robert is not Kim's father.

▆▆▆ Gary asserts that, because he was not made a party to the 1989 proceedings, he was denied the opportunity to assert the five-year statute of limitations and should now be allowed to collaterally attack the 1989 order and amended divorce judgment. Because Gary was a stranger to the prior judgment and not in privity with any party, he is not bound by the prior judgment. *E.g., Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D.1992); *see also Sprynczynatyk v. Celley*, 486 N.W.2d 230, 231 (N.D.1992). He is free to raise the presumption of paternity of Robert and relitigate that issue. We hold, however, that Gary may not rely upon the five-year statute of limitations of Section 14–17–05(1)(b), N.D.C.C., to preclude the rebuttal of that presumption.

In *People in Interest of L.J., supra*, 835 P.2d at 1267, the court addressed this issue:

"[I]t is the putative biological father who here seeks to use § 19–4–107(1)(b) as a shield against his own parental obligations.

"We hold, however, that the putative biological father may not use the statute as a shield to bar his obligations to his child or to deprive the presumptive father of his right to assert non-paternity as a defense. In reaching this conclusion, we agree with dicta set forth by our supreme court in People in Interest of R.T.L., supra [780 P.2d at 515 n. 13], in which it stated:

"[C]onstruing the five-year statute of limitations as barring only the bringing [of] actions to declare the non-existence of the father and child relationship does not foreclose the Department from recovering against another man in the event that the presumed father successfully rebuts paternity. Rather, once the presumption has been rebutted, paternity of the child by another man may be determined in the same action if the man has been made a party, § 19–4–107(1)(b), or in a separate action brought at any time up to the child's eighteenth or twenty-first birthday, depending upon the person or entity by which the proceeding is brought, § 19–4–108. Consequently, the ultimate financial burden falls on the child's biological father, or if he cannot be located, on the taxpayers. However, the burden will not fall on a presumed father who can rebut the presumption by clear and convincing evidence."

▆▆▆ Construing Section 14–17–05(1)(b), N.D.C.C., to provide an independent affirmative defense to putative fathers in Gary's position would be contrary to legislative intent and public policy. The overriding public policy of the Uniform Parentage Act is to protect the interests of the child. *See* Comment to Uniform Parentage Act § 6. It was not the intent of the Legislature in enacting the five-year limitation period under Section 14–17–05(1)(b), N.D.C.C., to provide putative biological fathers with a shield to avoid their duty to support their children. We cannot condone a result that would leave the child without a legally established father and effectively preclude any possibility of establishing paternity in the future.

We conclude that the district court erred in dismissing the action against Gary. We reverse the judgment dismissing the action and remand for further proceedings, including genetic testing.

JOHNSON, MESCHKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, specially concurring.

I agree that Gary, the putative father, may not assert our five-year statute of limitations as a shield against his own parental obligations. Accordingly, I concur in the result. However, I am very concerned that the majority's gratuitous con-

struction of NDCC § 14–17–05(1)(b) makes it a meaningless statute.

Section 14–17–05(1)(b) bars an action for declaring the nonexistence of a presumed father-child relationship unless it is brought within five years of the child's birth. The statute obviously recognizes that a mistaken designation of biological fatherhood can be rectified only within five years of the child's birth. After that, the importance of the correct identity of a sperm donor gives way to the importance of the relationship between the child and the individual who, though not perhaps the sperm provider, is the one who has provided all of those daily, monthly, and yearly minute and major contributions that define the essence of fatherhood. At least, those are the legislative facts incorporated into section 14–17–05(1)(b). After five years, biological fatherhood becomes an irrelevancy.

To construe this statute as nonetheless permitting presumed fathers to forgo bringing a timely action to disestablish their paternity, but still assert nonpaternity as a defense to an action for child support, renders the statute meaningless, superfluous and futile. Yet, there is a rule that the legislature neither requires nor does idle acts. *State ex rel. Kusler, et al. v. Sinner,* 491 N.W.2d 382 (N.D.1992).

The faulty interpretation also allows a presumed father to do indirectly what he cannot do directly—declare the nonexistence of his paternity any time he is called upon to provide child support. Aside from violating the plain meaning of the statute, such a construction also trivializes and diminishes the legislative goal—to protect a child's relationship with the man who has stood in the shoes of fatherhood for more than five years of that child's life and to protect the stability and the benefits to the child from the continuity of that relationship that are the incentives for the legislation. *Cf. Quirk v. Swanson,* 368 N.W.2d 557, 561 (N.D.1985). The legislature understands that fatherhood comes in several different packages—biological, adoptive or, in the case of a five-plus-year "father," even an estopped or laches-ridden one. *Cf. Mougey v. Salzwedel,* 401 N.W.2d 509, 514 (N.D.1987) (Levine, J., dissenting).

The common law rule that allows the defendant to assert as a defense a time-barred affirmative claim should not be applied here when to do so, effectively defeats the legislative purpose of the statute at issue. *See People in Interest of R.T.L.,* 780 P.2d 508, 519 (Colo.1989) (Mullarkey, J., dissenting). In this State, there is no common law where the law is declared by the Code. NDCC § 1–01–06.

Because the construction of NDCC § 14–17–05(1)(b) is not necessary to the majority's decision, I hope its dicta is not set in stone and will not serve as precedent. It should not and, I hope, it will not.