2004 ND 73

**Diane L. RYDBERG, Daniel P. Richter, Director, and Ward County Social Service Board, Plaintiffs and Appellants**

v.

**Andrew G. RYDBERG, Defendant and Appellee.**

No. 20030212.

Supreme Court of North Dakota.

April 13, 2004.

Tina M. Heinrich (argued), Assistant State's Attorney, and Lisa J. Zastrow (appeared), Assistant State's Attorney, Minot, N.D., for plaintiffs and appellants.

Faron E. Terry, Terry Law Office, Minot, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] The Ward County Social Service Board is appealing a Northwest Judicial District Court order dismissing a child support action against Andrew Rydberg because DNA testing excluded him as the father of Diane Rydberg's child. The Board argues that because Andrew Rydberg did not rebut the presumption of paternity, the district court erred when it dismissed the child support action. The Board also argues the district court erred because it did not consider the best interests of the child involved and no guardian ad litem was appointed. We affirm, concluding the district court did not err in dismissing the child support action.

I

[¶ 2] On March 9, 1992, Diane Rydberg gave birth to a child. On March 10, 1992, Andrew Rydberg acknowledged in writing that he was the father of the child. The parties were married on July 22, 1994, and separated in April 2002. In May 2002, the Ward County Social Service Board brought an action for child support against Andrew Rydberg. The Board is a real party in interest under N.D.C.C. § 14–09–09.26 for the purposes of establishing paternity and of securing repayment of benefits paid, future support, and costs in this action. *See Sprynczynatyk v. Celley*, 486 N.W.2d 230, 231–32 (N.D.1992). After the action for child support was brought, Andrew Rydberg denied he was the child's biological father and asked that the case be dismissed. In his answer, he stated that if the case were not dismissed, he would request genetic testing. He subsequently requested genetic testing for the purpose of proving the nonexistence of a parent-child relationship. On September 23, 2002, a hearing was held on the request for genetic testing. On October 18, 2002, the district court ordered Diane Rydberg, Andrew Rydberg, and the child to submit to genetic testing. The district court found DNA testing excluded Andrew Rydberg as the father of Diane Rydberg's child. On the basis of the DNA testing, the district court dismissed the case with prejudice. The Board moved for reconsideration of the district court's order. The district court, finding the paternity evidence was clear that Andrew Rydberg was not the father of the child, denied the motion.

[¶ 3] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

II

[¶ 4] The Ward Country Social Service Board argues Andrew Rydberg was the presumed father of the child and failed to rebut this presumption.

A

[¶ 5] Andrew Rydberg argues the Ward County Social Service Board is pre-

vented from raising this issue on appeal because it did not raise it in its motion to alter or amend the judgment under N.D.R.Civ.P. 59(j). Andrew Rydberg argues that issues on appeal should be restricted to those raised in a motion to alter or amend the judgment. We previously addressed this issue in *In re N.C.C.*, in which we concluded that a motion under N.D.R.Civ.P. 59(j), unlike a motion for a new trial under N.D.R.Civ.P. 59(b), does not limit the issues on appeal to those presented in the motion. *In re N.C.C.*, 2000 ND 129, ¶ 12, 612 N.W.2d 561. We will not, however, consider issues that were not raised at the district court. *See Owens v. State*, 1998 ND 106, ¶ 50, 578 N.W.2d 542 (we will not consider issues raised for the first time on appeal).

[¶ 6] The Board moved to alter or amend the judgment under N.D.R.Civ.P. 59(j). In its motion, the Board argued that Andrew Rydberg was precluded from rebutting the presumption of paternity. This is one basis for the Board's argument that Andrew Rydberg failed to rebut the presumption of paternity. This issue was presented to the district court during the hearing regarding genetic tests. The Board also argued to the district court that if genetic tests were positive, the best interests of the child should be determined. This is another basis for the Board's argument that Andrew Rydberg has not rebutted the presumption of paternity. We conclude the Board is not prevented from raising this issue on appeal.

## B

[¶ 7] The Ward County Social Service Board argues that a presumption of paternity was created under N.D.C.C. § 14–17–04(1)(e), (1)(c)(1), and (1)(d). It argues this presumption cannot be rebutted because the statute of limitations to rebut the presumption of paternity has run and because genetic tests alone should not be enough to rebut the presumption of paternity.

[¶ 8] Section 14–17–04(1)(e), N.D.C.C., provides:

1. A man is presumed to be the biological father of a child if:

    . . . .

    e. The man acknowledges the man's paternity of the child in a writing filed with the division of vital statistics of the state department of health, which shall promptly inform the mother of the filing of the acknowledgment, and the mother does not dispute the acknowledgment within a reasonable time after being informed of the acknowledgment, in a writing filed with the division of vital statistics of the state department of health. If another man is presumed under this section to be the child's father, acknowledgment may be effected only with the written consent of the presumed father or after the presumption has been rebutted.

Section 14–17–04(1)(c)(1), N.D.C.C., provides:

1. A man is presumed to be the biological father of a child if:

    . . . .

    c. After the child's birth, that man and the child's biological mother have married or attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:

    (1) The man has acknowledged the man's paternity of the child in writing filed with the division of vital

statistics of the state department of health.

Section 14–17–04(1)(d), N.D.C.C., provides:

1. A man is presumed to be the biological father of a child if:

. . . .

d. While the child is under the age of majority, the man receives the child into the man's home and openly holds out the child as the man's biological child.

[¶ 9] One day after the birth of Diane Rydberg's child, Andrew Rydberg acknowledged paternity in a writing filed with the division of vital statistics of the State Department of Health. After the child's birth, Andrew Rydberg and the child's biological mother, Diane Rydberg, married. The couple lived together with the child during the marriage. Andrew Rydberg does not dispute that a presumption of paternity was created.

[¶ 10] " 'Issues involving the application and interpretation of statutes are questions of law fully reviewable by this Court.' " *Guardianship of Shatzka,* 2003 ND 147, ¶ 5, 669 N.W.2d 95 (quoting *Public Serv. Comm'n v. Wimbledon Grain Co.,* 2003 ND 104, ¶ 20, 663 N.W.2d 186). In construing statutes, it is the Court's duty to ascertain the Legislature's intent. N.D.C.C. §§ 1–02–02 and 1–02–03. Words in a statute are to be understood in their ordinary sense. *Public Serv. Comm'n v. Wimbledon Grain Co.,* 2003 ND 104, ¶ 20, 663 N.W.2d 186. Words must be given their plain, ordinary, and commonly understood meaning. *Reed v. Hillsboro Pub. Sch. Dist. No. 9,* 477 N.W.2d 237, 240 (N.D.1991). "We construe statutes as a whole and harmonize them to give meaning to related provisions." *Shatzka,* at ¶ 5.

1

[¶ 11] The Ward County Social Service Board argues the presumption of paternity was not rebutted within the time frame allowed by N.D.C.C. § 14–17–05(1)(b), which provides:

1. A child, the child's biological mother, or a man presumed to be the child's father under subdivision a, b, or c of subsection 1 of section 14–17–04, may bring an action:

. . . .

b. For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision a, b, or c of subsection 1 of section 14–17–04 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if that man has been made a party.

[¶ 12] Section 14–17–05(2), N.D.C.C., provides that if paternity was presumed under subdivision d, e, or f of subsection 1 of section 14–17–04, an action can be brought at any time to determine the existence or nonexistence of the father and child relationship.

[¶ 13] Although the statute of limitations to rebut the presumption created under section 14–17–04(1)(c) has passed, N.D.C.C. § 14–17–05(1)(b), section 6(a)(2) of the Uniform Parentage Act ("U.P.A."), does not preclude an assertion of nonpaternity as a defense to the presumptive father in another action. *Interest of K.B.,* 490 N.W.2d 715, 717 (N.D.1992). Nonexistence of the father and child relationship can be asserted as a defense after the five years have passed. *See id.*

[¶ 14] North Dakota distinguishes between bringing an action and asserting a defense for the purposes of this statute.

Few other states that have adopted the U.P.A. have addressed this distinction. In Alabama, there is no statute of limitations to claiming nonexistence of paternity; therefore, a man can claim the nonexistence of paternity at any time, even if presumed to be the father. *See J.N.H. v. N.T.H. II*, 705 So.2d 448, 452 (Ala.Civ.App. 1997). Missouri, however, specifically mentions that the five-year statute of limitations forecloses a defense of nonpaternity by the presumed father. *Missouri Div. of Child Support Enforcement v. T.J.*, 981 S.W.2d 149, 150 (Mo.1998). As explained in *K.B.*, Minnesota and Colorado have also interpreted the U.P.A. to allow a presumed father to challenge the presumption of paternity in an action brought more than five years after the child's birth. *See generally K.B.*, 490 N.W.2d at 717. These states have found that the right to claim nonpaternity as a defense is not subject to time limitations. *See also Interest of R.T.L.*, 780 P.2d 508, 514 (Colo.1989); *Reynolds v. Reynolds*, 458 N.W.2d 103, 105 (Minn. 1990); *State ex rel. Ward v. Carlson*, 409 N.W.2d 490, 493 (Minn.1987); *Ford v. Mostaghimi*, 2002 WL 46996, *2, 2002 Minn.App. LEXIS 47, *5. These cases remain good law.

[¶ 15] The results in these cases, although based in part on interpretation of the U.P.A., were also based on the laws in those states pertaining to statute of limitations. *Reynolds*, 458 N.W.2d at 105; *K.B.*, 490 N.W.2d at 717; *R.T.L.*, 780 P.2d at 514. In *K.B.*, this Court held that section 14–17–05(1)(b), N.D.C.C., is a statute of limitations and, as such, acts only to bar the bringing of the specified action and does not extinguish the claim or affect remedies other than the one to which it applies. 490 N.W.2d at 717 (citing *Guthmiller v. North Dakota Department of Human Services*, 421 N.W.2d 469, 471, 473 (N.D.1988); *Larson v. Quanrud, Brink &*

*Reibold*, 78 N.D. 70, 47 N.W.2d 743, 750 (1950)).

[¶ 16] In reexamining *K.B.*, this Court contemplated whether *K.B.* might set up a situation in which no other legal father could be established because of the statute of limitations for an action to determine a father-child relationship. Section 14–17–06, N.D.C.C., provides:

An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 14–17–04 may not be brought later than three years after the birth of the child, or later than three years after July 1, 1975, whichever is later. However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority.

[¶ 17] If there is a presumption of paternity, however, N.D.C.C. § 14–17–05 provides that an action can be brought at any time to prove the existence of a father-child relationship presumed under subdivision a, b, c, d, e, or f of subsection 1 of section 14–17–04. *See* N.D.C.C. § 14–17–05(1)(a) and (2). Therefore, if there is a presumed father, then an action can be brought at any time to establish the existence of a father-child relationship. If, on the other hand, there is no presumed father and paternity of the child has not been determined, a child or representative of the child may bring an action at any time, although the parents may not be able to bring the action. Because an action to establish a father-child relationship is not completely barred by the statute of limitations, *K.B.* does not set up a situation in which no other legal father could be determined.

[¶ 18] Because section 14–17–05(1)(b) is a statute of limitations barring only the bringing of a paternity action, we conclude

Andrew Rydberg was not precluded from raising nonpaternity as a defense in the child support action brought by the Ward County Social Service Board.

2

[¶ 19] The Ward County Social Service Board argues that genetic tests are not enough to rebut the presumption of paternity in light of N.D.C.C. § 14–17–04(2), which provides:

A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man.

[¶ 20] The Board argues that N.D.C.C. § 14–17–04(2) requires adjudication of paternity by another man before the presumption is rebutted. It argues this is the only way paternity can be rebutted.

[¶ 21] One U.P.A. state has held that this statute clearly states the presumption of paternity is rebutted only by a court decree establishing paternity of the child by another man. It explains that in the absence of an order declaring nonparentage, the presumed father is still the father of the child. *In re Marriage of Wendy M.*, 92 Wash.App. 430, 962 P.2d 130, 134–35 (1998). This decision was later clarified in *In re Parentage of Liam J.H.*, 119 Wash. App. 1019, 2003 WL 22701581 *7 (2003). The court stated the "Wendy M. court meant that as applied to the facts of that case, only a decree establishing paternity in another man would have relieved the presumed father of his obligation to support his presumptively legitimate child." *Id.*

[¶ 22] Many other states that have adopted the U.P.A., however, have found that biological evidence is clear and convincing enough to rebut the presumption of paternity. *See J.N.H. v. N.T.H. II*, 705 So.2d 448, 452 (Ala.Civ.App.1997) (scientific evidence was sufficient to support trial court's decision excluding husband as child's biological parent); *Henry v. Henry*, 1998 ND 141, ¶¶ 7–8, 581 N.W.2d 921 (genetic testing will rebut the presumption of paternity created by N.D.C.C. § 14–17–04(2)); *Blake v. Division of Child Support Enforcement*, 525 A.2d 154, 159 (Del.1987) (clear and convincing evidence can include the results of scientific tests); *Villareal v. Peebles*, 299 Ill.App.3d 556, 233 Ill.Dec. 502, 701 N.E.2d 145, 149 (1998) (hard or genetic evidence is needed to overcome the presumption of paternity); *Dillon v. Industrial Comm'n*, 195 Ill.App.3d 599, 142 Ill.Dec. 341, 552 N.E.2d 1082, 1088 (1990) (presumption rebutted if blood tests show person is not the father of the child); *Patrick T. v. Michelle L.*, 2000 WL 1752792, *3, 2000 Ohio App. LEXIS 5578 *9 (Ohio App.2000) (genetic tests are admissible to overcome the presumption of paternity). Because these states have found genetic tests to rebut the presumption of paternity, it is clear they do not interpret the U.P.A. as allowing the presumption of paternity to be rebutted only when another man is adjudicated the father.

[¶ 23] If the Legislature had intended a court decree establishing paternity of the child by another man to be the only way to rebut the presumption, we believe it would not have included the clause stating that a presumption of paternity can be rebutted by clear and convincing evidence. The ordinary meaning of the statutory language establishes that a presumption of paternity can also be rebutted by clear and convincing evidence. To interpret the statute as the Board would like would be to ignore part of the statute altogether.

[¶ 24] The Board also argues that clear and convincing evidence does not rebut the presumption of paternity in every case and that other factors must be considered.

[¶ 25] One U.P.A. state has held that clear and convincing evidence, such as the results of genetic tests, will not rebut the presumption of paternity in every case, but only in appropriate cases. It bases this rationale on the statutory language that says a presumption of paternity may be rebutted in an appropriate action only by clear and convincing evidence. *In re Nicholas H.,* 28 Cal.4th 56, 120 Cal. Rptr.2d 146, 46 P.3d 932, 939 (2002). In *Nicholas H.,* the court stated:

> When [the legislature] used the limiting phrase *an appropriate action,* the Legislature is unlikely to have had in mind an action ... in which no other man claims parental rights to the child, an action in which rebuttal of the ... presumption will render the child fatherless. Rather, we believe the Legislature had in mind an action in which another candidate is vying for parental rights and seeks to rebut a ... presumption in order to perfect his claim, or in which a court decides that the legal rights and obligations of parenthood should devolve upon an unwilling candidate.

*Id.* at 941.

[¶ 26] This interpretation allows the court to determine on the basis of the underlying facts and circumstances of an action whether that action is appropriate. The word action is well-defined in law. An action has been defined as a legal demand of one's rights in a court of justice. *LC v. TL,* 870 P.2d 374, 379 (Wyo.1994); *see also* 1A C.J.S. Actions § 2 (1985); *Elmo v. James,* 282 S.W. 835 (Tex.Civ.App.1926). Section 14–17–04(2), N.D.C.C., is referring to an appropriate legal demand of one's rights, not the appropriate circumstances under which the demand of rights is as-

serted. *See also LC v. TL,* 870 P.2d at 379 (interpreting same statute provision to plainly mean that when an appropriate action, meaning a legal demand of one's rights, has been brought, a presumption can be rebutted by clear and convincing evidence). We find the statute to be plain and unambiguous, and we reject the Board's and California's interpretations.

[¶ 27] The California cases relied upon by the Board are distinguishable from this case. Those cases involved presumed fathers whose paternity was being challenged by others. The fathers were not asserting nonpaternity, but rather were trying to retain the presumption of paternity. The cases involved situations in which a child could possibly have been precluded from having a relationship with a committed father by another person the child may not even have known. The California cases were custody cases and not child support actions. *See generally In re Raphael P.,* 97 Cal.App.4th 716, 118 Cal. Rptr.2d 610 (2002); *In re Jerry P.,* 95 Cal.App.4th 793, 116 Cal.Rptr.2d 123 (2002).

[¶ 28] The Board also argues that the best interests of the child should have been considered because there is a competing presumption of paternity in this case. At oral argument, however, the Board conceded that no such competing presumption existed.

[¶ 29] We conclude genetic tests are enough to rebut the presumption of paternity in N.D.C.C. § 14–17–04(2).

### III

[¶ 30] The Ward County Social Service Board also argues the district court erred in failing to have a guardian ad litem present to represent the child under N.D.C.C. § 14–17–08. During the hearing on genetic testing, the Board stated this

was a case in which a guardian ad litem should be appointed. Although this began as a child support action and not an action to declare the existence or nonexistence of paternity, the effect of this case will be the same. The father sought to rebut the presumption of paternity presumed under N.D.C.C. § 14–17–04. The court order in this case established that DNA testing excludes Andrew Rydberg as the child's father. Under N.D.C.C. § 14–17–08:

A child who is a minor must be represented by the child's parent whose parentage has been established under section 14–17–03 or a guardian ad litem appointed by the court. The court may appoint the director of the county social service board as guardian ad litem for the child.

[¶ 31] In this case, the court did not appoint a guardian ad litem to represent the child's interests. Section 14–17–08, N.D.C.C., does not require that a guardian ad litem be appointed when a parent is representing a child. In this case, however, because it does not appear a parent was representing the child, a guardian ad litem should have been appointed. But here the Board was clearly representing the child's interests. During the hearing on genetic tests, the Board stated several factors to stop the challenge of paternity. Among these factors, the Board listed the best interests of the child. The Board also stated that "[f]or the child's sake I think that we have to be careful about how we open up her birthright." We conclude the district court's failure to appoint a guardian ad litem in this case did not affect the substantial rights of the parties, because the child's interests were represented. Therefore, there was no reversible error. N.D.R.Civ.P. 61.

IV

[¶ 32] Because Andrew Rydberg was not precluded from raising nonpaternity as a defense in this child support action, and because genetic tests are enough to rebut the presumption of paternity, and because the child's interests were adequately represented, we affirm the district court's dismissal.

[¶ 33] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, J., concur.

KAPSNER, Justice, dissenting.

[¶ 34] I respectfully dissent. Rydberg affirmatively situated himself into the life of the child as her father. He signed an acknowledgment of paternity the day after she was born. He accepted the child into his home and held her out as his own for the first ten years of her life. He married the child's mother. If this child has a different biological father, Rydberg has effectively supplanted any relationship she might have had with that father for a decade of her life. Rydberg did not deny paternity until after it became clear he would be responsible for child support. In an effort to dodge a child support obligation, Rydberg requested genetic tests. The district court erred when it permitted Rydberg to contest paternity because the statute of limitations had passed. Even if the statute of limitations did not absolutely bar the defense, the district court erred when it ordered genetic tests and determined paternity without providing the child with the protections of the Uniform Parentage Act, N.D.C.C. ch. 14–17, and without considering whether Rydberg was equitably estopped from asserting nonpaternity.

I.

[¶ 35] As the majority explains, Rydberg is the presumed father under three subsections of N.D.C.C. § 14–17–04. The majority relies upon *In re K.B.*, 490

N.W.2d 715, 717 (N.D.1992), to conclude the "[UPA] does not preclude an assertion of nonpaternity as a defense to the presumptive father in another action." The majority applies *K.B.* in a manner inconsistent with the legislative intent expressed in N.D.C.C. ch. 14–17.

[¶ 36] I believe this Court failed to follow legislative intent in *K.B.* when it stated nonpaternity could be raised as a defense in an action "presumably to collect child support." *K.B.*, 490 N.W.2d at 716. Technically, that part of *K.B.* is dictum since the judgment determining the nonpaternity of the presumed father was not on appeal in *K.B.* Rather, another man, alleged to be the biological father of K.B., was attempting to use the statute of limitations applicable to actions to determine "the nonexistence of the father and child relationship" as a shield in an action to determine the existence of a biological relationship between him and K.B. N.D.C.C. § 14–17–05(1)(b). This Court did not permit the alleged biological father to use a non-applicable statute of limitations to avoid support. *See P.E. v. W.C.*, 552 N.W.2d 375, 378–79 (N.D.1996) (distinguishing between statutes of limitations applying to actions to determine the existence of a father-child relationship and those applying to actions to determine the nonexistence of a father-child relationship and holding the latter does not shield a putative father in an action for support).

[¶ 37] In this case, the statute of limitations in N.D.C.C. § 14–17–05(1)(b) is directly applicable and the legislature has

determined that "in no event" should Rydberg be permitted to declare the nonexistence of the father-child relationship because the limitations period has long passed. Rydberg's voluntary acknowledgment of paternity and his failure to take any action to disavow his paternity within the statutory time period should conclusively prohibit him from disowning this child merely by raising a defense to a child support action.[1]

[¶ 38] In *K.B.*, the Court stated, "the overriding public policy of the Uniform Parentage Act is to protect the interests of the child." *K.B.*, 490 N.W.2d at 718. The Court further recognized its ruling in *K.B.* was to prevent putative biological fathers from using the statute of limitations as a shield to avoid their duty to support their children. *Id.* The Court explained, "[w]e cannot condone a result that would leave the child without a legally established father and effectively preclude any possibility of establishing paternity in the future." *Id.* Ironically, the majority in this case relies on *K.B.* to achieve the result the Court in *K.B.* specifically sought to avoid. Unlike the child in *K.B.*, the child in this case is left without either a presumed father or a putative father to step in and fulfill the parenting role, either psychologically or financially. The trial court, and a majority of this Court, have done a great disservice to this child to allow the presumed father, who had acted in that role for over ten years, to abandon his role without another to fill the void.

1. After this Court's decision in *K.B.*, the legislature enacted N.D.C.C. ch 14–19. This chapter substantially strengthens the effect of an acknowledgment of paternity. Under N.D.C.C. § 14–19–04, acknowledgment of paternity through a signed writing filed with the department of health has the "force and effect of a relationship of father and child established through judgment of a court of compe-

tent jurisdiction." Under the chapter, an even shorter limitation period applies to an attempt by the acknowledging father to set aside the acknowledgment. Although not applicable to Rydberg's 1992 acknowledgment of paternity, it is indicative of the legislative view of the significance and impact of acknowledging paternity.

[¶ 39] This result subverts legislative intent as well as previous case law. Legislative intent fixing a five-year period in which to disestablish paternity is not given effect when a man who is the presumed father is permitted to shield himself from the normal obligations of parenthood by asserting nonpaternity as a defense in a support action when he could no longer initiate an action to establish nonpaternity. *See K.B.*, 490 N.W.2d at 718–719 (Levine, J., concurring specially). The majority rewards an individual who sat on his rights and is now precluded from initiating an action to achieve the result of the decision now being affirmed.

## II.

[¶ 40] The *K.B.* Court suggested that allowing a party to assert as a defense what the party could not bring as a separate cause of action is no different in a child support case than it would be in any other case. *K.B.*, 490 N.W.2d at 717. What that analysis fails to consider is the obligation to support a child is part of the bundle of continuing obligations of being a parent. N.D.C.C. § 14–09–08. The parent-child relationship is unlike the normal situation in which a party is permitted to raise, as a defense, what the party could not assert as a cause of action. In normal situations, the defending party has reason to believe that the passage of time has dissolved the legal consequences of an event or a prior relationship. The passage of time has quite the opposite effect for a presumed father. N.D.C.C. § 14–17–05 makes the passage of time significant to

*affirm* the relationship. If a presumed father wishes to avoid the bundle of obligations that go with being a parent, including support, N.D.C.C. § 14–17–05 requires that he take action within five years.[2] N.D.C.C. ch. 14–17 was singular advice to Rydberg that five years from acknowledging paternity of this child, he could expect that his obligations as a parent continued during the remainder of her minority. Both the child and society have an interest in seeing that a parent fulfill the continuous obligation to support a child. Both the child and society have a right to rely upon the presumed father, who takes no action to disavow the relationship, to continue to meet his obligations to the child.

[¶ 41] When the legislature creates a statute of limitations specifically establishing a time frame to deny the presumed parent and child relationship, it defies logic to say despite the passage of the limitations period, an essential element of the relationship, the obligation to support, can be defeated by simply asserting nonpaternity as a defense. The majority recognizes there is a split among jurisdictions on whether nonpaternity can be raised as a defense. I believe, however, that the better reasoning recognizes the clear signal in N.D.C.C. ch. 14–17 that nonpaternity cannot be asserted by a presumed father under these circumstances after five years. N.D.C.C. ch. 14–17 provides significant protection for a child who has been acknowledged by a father in not permitting such a defense; this decision eliminates the protection provided by the legislature.

---

**2.** Courts have distinguished between a "pure" statute of limitations (or "prescriptive" limitations period) and a "special" (or "peremptive") statute of limitations. "A 'pure' statute of limitations operates only to bar a remedy, and does not affect the substantive existence of a legal right or power. A special limitation, by contrast, is an integral, substantive element of the right or power in question; the right or power cannot exist in scope beyond the special limitation." *Cunningham v. Ins. Co. of North America*, 515 Pa. 486, 530 A.2d 407, 412 (1987). N.D.C.C. ch. 14–17 establishes a special limitation period in which a presumed father can contest his paternity.

What was mere dictum in *K.B.* becomes settled law under this decision and I cannot agree.

### III.

[¶ 42] Even if this Court were to hold that the statute of limitations does not bar the assertion of nonpaternity, it should not follow that the child also loses the further protections built into N.D.C.C. ch. 14–17 for a determination of existence or nonexistence of the parent-child relationship. Although the district court ordered genetic tests, citing N.D.C.C. § 14–17–10 as authority for the tests, the district court did so without otherwise following the procedures of the chapter. The majority acknowledges the decision in this case has the effect of a determination of nonpaternity; yet this child had no representative for her interests. The district court erred when it allowed the case to proceed to a determination of nonpaternity without appointing a guardian ad litem for the child. North Dakota law requires that a child involved in a paternity dispute be made a party to the action and be represented by a natural parent or a guardian ad litem. N.D.C.C. § 14–17–08 provides:

> The child must be made a party to the action. A child who is a minor must be represented by the child's parent whose parentage has been established under section 14–17–03 or a guardian ad litem appointed by the court. The court may appoint the director of the county social service board as guardian ad litem for the child. The biological mother, each man presumed to be the father under section 14–17–04, and each man alleged to be the biological father, must be made parties or, if not subject to the jurisdiction of the court, must be given notice of the action in a manner prescribed by the court and an opportunity to be heard. The court may align the parties.

[¶ 43] This Court has previously held the language of this section is mandatory, even when neither party has requested representation for the child. *Hadland v. Schroeder*, 326 N.W.2d 709, 715 (N.D. 1982). The majority states Ward County Social Service Board sufficiently represents the interests of the child. However, in the hearing held September 23, 2002, the attorney appearing for Daniel Richter, Director of Ward County Social Service Board, indicated she represented the interests of the people of North Dakota, not the child. The attorney further stated: "[t]his is a case where a guardian ad litem should be appointed for the child as well." The child in this case, who is fatherless as a result of the decision, should have been made a party and should have been represented by a guardian ad litem.

[¶ 44] Assuming that the statute of limitations did not bar Rydberg's assertion of nonpaternity, it was error for the district court to order genetic testing without first considering the best interests of the child and without considering whether, even with genetic testing, Rydberg was estopped from asserting his nonpaternity. Under the Uniform Parentage Act § 608, a court may deny a motion seeking an order for genetic testing if the court determines the best interests of the child will not be protected by allowing such evidence. The section provides:

> (b) In determining whether to deny a motion seeking an order for genetic testing under this section, the court shall consider the best interest of the child, including the following factors:

> (1) the length of time between the proceeding to adjudicate parentage and the time that the presumed father was placed on notice that he might not be the genetic father;

(2) the length of time during which the presumed father has assumed the role of father of the child;

(3) the facts surrounding the presumed father's discovery of his possible nonpaternity;

(4) the nature of the relationship between the child and the presumed father;

(5) the age of the child;

(6) the harm that may result to the child if presumed paternity is successfully disproved;

(7) the nature of the relationship between the child and any alleged father;

(8) the extent to which the passage of time reduces the chances of establishing the paternity of another man and a child-support obligation in favor of the child; and

(9) other factors that may affect the equities arising from the disruption of the father-child relationship between the child and the presumed father or the chance of other harm to the child.

Uniform Parentage Act § 608. Although North Dakota did not adopt this section of the Uniform Parentage Act, N.D.C.C. ch. 14–17 specifically requires the best interests of the child be evaluated. N.D.C.C. § 14–17–12(1) requires the judge at the pre-trial hearing in paternity proceedings to "evaluate the probability of determining the existence or nonexistence of the father and child relationship in a trial and whether a judicial declaration of the relationship would be in the best interest of the child." The factors identified in Uniform Parentage Act § 608 would be significant in considering the best interests of this child, which as this Court noted in *K.B.*, 490 N.W.2d at 718, should be the overriding concern.

[¶ 45] Consideration of the child's best interests under N.D.C.C. § 14–17–12 would not prohibit an order for genetic testing in an action properly brought within the statute of limitations. However, even if the testing establishes the child has another biological father, courts have determined that this does not end the inquiry when the child has an established relationship with a presumed father. *N.A.H. v. S.L.S.*, 9 P.3d 354, 357 (Colo.2000) (reversing order determining paternity of biological father when the best interests of the child had not been considered in determining paternity between presumed father based upon marriage and presumed father based upon genetic testing). The best interests of this child have not been considered as no further hearing was conducted after the district court received the results of the genetic testing.

## IV.

[¶ 46] Even if the statute of limitations did not bar an order for genetic testing, a court considering paternity must determine whether estoppel should operate to preclude an assertion of nonpaternity when the presumed father has acted as the child's father and induced reliance of the child on the asserted paternity to the detriment of the child, the mother or the state. States which permit genetic tests to overcome the presumption of paternity based upon marriage consider whether, under the facts, paternity by estoppel must be recognized. *See Alberto T. v. Tammy D.*, 274 A.D.2d 587, 587–88, 712 N.Y.S.2d 392 (N.Y.App.Div.2000) (citing *Ettore I. v. Angela D.*, 127 A.D.2d 6, 13, 513 N.Y.S.2d 733 (N.Y.App.Div.1987) (applying the doctrine of estoppel to preclude a presumed father from asserting nonpaternity)); *see also* Diane S. Kaplan, *Why Truth is Not a Defense in Paternity Actions*, 10 Tex. J. Women & Law 69, 79–80 (explaining the New York model of applying best interests

factors when competing presumptions arise in paternity disputes).

[¶ 47] In *Pietros v. Pietros,* 638 A.2d 545 (R.I.1994), the Rhode Island Supreme Court held that although an individual may rebut the presumption of paternity by clear and convincing evidence, courts may equitably estop a presumptive father from challenging paternity where the parties have accepted or agreed to a husband's status as father of the child.

[¶ 48] In *Randy A.J. v. Norma I.J.,* 2004 WI 41, ¶ 2, 677 N.W.2d 630, the Wisconsin Supreme Court held the mother and putative father were equitably estopped from asserting the genetic test results, showing a 99.99% probability that the putative father was the biological father, to rebut the statutory presumption that the man married to the mother was the father of the child. The court noted "[e]quitable estoppel requires proof of three elements: (1) an action or an inaction that induces; (2) reliance by another; and (3) to his or her detriment." *Id.* at ¶ 26. The Wisconsin court decided that the mother and putative father's actions and lack of actions, which were relied on by the child and the presumed father, combined with the state's interest in preserving the status of the child as a marital child, outweighed any interest "in a purely biological approach to parenthood." *Id.* at ¶ 31.

[¶ 49] From the scant facts alleged in this record, estoppel must be considered. The child was born in March 1992. Rydberg signed an acknowledgment of paternity the day after her birth and subsequently married the child's mother. When this action for support was commenced in June 2002, the mother and Rydberg had only been separated since April 2002, and had not divorced. It is clear that the trial court in this case did not apply considerations of estoppel, although estoppel was

raised at the hearing on September 23, 2002. Once the results of the genetic testing were known to the court, no further hearings were conducted. The court ordered the application for child support dismissed and entered an order stating, "Andrew G. Rydberg is not the father of the child." It was error for the trial court to do so.

[¶ 50] The district court considered the genetic tests determinative and the majority opinion effectively determines that biology should outweigh the emotional investment a child puts into a man who acts as her father for many years. For centuries, society has fully recognized the importance of parent-child relationships between individuals who are not bound by biology. The majority minimizes the potential parent-child relationship developed between parents and children who are not necessarily genetically linked. Modern technology allows for donor sperm, donor eggs, and surrogate mothers to give birth to children even when they are not related by biology. The majority opinion, by making genetics determinative, disregards the similar emotional and psychological bonds developed by adoptive parents, parents who have benefitted from assisted reproduction, and other non-traditional parent-child relationships. Genetics does not necessarily triumph over the rewards and obligations of parenting, and N.D.C.C. ch. 14–17 indicates that it ought not under the circumstances of this case.

V.

[¶ 51] I would reverse the decision, vacate the order of the court declaring Andrew G. Rydberg not to be the father and dismissing the support action, and require the support action to proceed. I believe this is required under N.D.C.C. § 14–17–05, because Rydberg failed to commence an action to declare his nonpaternity with-

in five years of acknowledging the child as his own. Even if the statute of limitations is not applied to bar the assertion of nonpaternity, I believe the case must still be reversed and the order vacated. In order to examine the issue of paternity, the court must appoint a guardian ad litem to represent the child, afford her the protections of N.D.C.C. ch. 14–17, and consider the possibility that, despite the biological evidence, Rydberg may be estopped from asserting nonpaternity.

[¶ 52] Carol Ronning Kapsner

MARING, Justice, dissenting.

[¶ 53] I respectfully dissent. I agree with part III of Justice Kapsner's dissent. The district court erred when it failed to appoint a guardian ad litem for the child and failed to consider the best interests of the child before concluding that the results of the genetic testing were determinative of paternity.

[¶ 54] I would reverse and remand for further proceedings.

[¶ 55] Mary Muehlen Maring