2010 ND 172

**In the Interests of S.L.W., a Minor Child, by her natural guardian A.W.; State of North Dakota, by and through the Barnes County Social Service Board; and A.W., Plaintiffs and Appellees**

v.

**A.K., Defendant and Appellant.**

**No. 20100006.**

Supreme Court of North Dakota.

Aug. 31, 2010.

Cynthia Gay Schaar, Special Assistant Attorney General, Jamestown, N.D., for plaintiffs and appellees.

Kathleen K. Trosen, Fessenden, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1]  A.K. ("Adam")[1] appealed from a district court order declaring him to be the biological father of S.L.W. ("Sara") and ordering him to pay child support. We affirm.

---

1.  All names are pseudonyms.

## I

[¶ 2]  A.W. ("Amanda"), the biological mother of Sara, was married to C.W. ("Charles") when Sara was born in 1991. Amanda and Charles divorced in 1996, and the divorce judgment ordered Charles to pay child support for Sara.  In 2004, Charles moved to disestablish his paternity of Sara. After genetic testing established that Charles was not Sara's biological father, judgment was entered declaring Charles was not Sara's father and terminating his child support obligation.  No appeal was taken from that judgment.

[¶ 3]  In November 2006, Sara began receiving governmental assistance. Amanda assigned her right to receive support on Sara's behalf to the North Dakota Department of Human Services and named Adam as the person responsible for Sara's support.  In 2007, the Regional Child Support Enforcement Unit brought this paternity action against Adam, alleging he is Sara's biological father and seeking an order of child support.  The district court ordered Adam to submit to genetic testing, the results of which showed a 99.99 percent probability that he is the biological father of Sara. The district court found Adam is Sara's biological father and ordered him to pay child support effective November 2006, when Sara began receiving governmental assistance.

## II

■ [¶ 4]  Adam's notice of appeal, dated January 5, 2010, attempts to appeal from the district court's November 4, 2009 order which concluded Adam was Sara's biological father and he owed her a duty of support.  Judgment was subsequently entered on February 18, 2010.  This Court has held that when a party attempts to appeal before a final judgment or order is entered, we will treat the appeal as being from the subsequently entered consistent judgment.  *E.g., Farmers Union Oil Co. of Garrison v. Smetana*, 2009 ND 74, ¶ 7, 764 N.W.2d 665;  *City of Grand Forks v. Lamb*, 2005 ND 103, ¶ 13, 697 N.W.2d 362.  We therefore treat Adam's appeal as an appeal from the February 18, 2010 judgment.

## III

■ [¶ 5]  Adam contends the district court erred in ordering him to submit to genetic testing and in failing to dismiss the paternity action against him because Charles is Sara's presumed and adjudicated father under North Dakota law.  Adam contends genetic testing was barred by N.D.C.C. § 14–20–26(2), which provides, "A support enforcement agency may order genetic testing only if there is no presumed, acknowledged, or adjudicated father."  Adam further contends that, in spite of the 2004 judgment disestablishing Charles's paternity of Sara, Charles remained a presumed and adjudicated father under North Dakota law and the paternity action against Adam should have been dismissed.

[¶ 6]  Adam's arguments are premised upon his assertion the district court erred in allowing Charles to initiate the 2004 proceedings for a declaration of nonpaternity because that action was barred by the statute of limitations.  At the time of the 2004 proceedings, N.D.C.C. § 14–17–05(1)(b) provided that a presumed father could bring an action to disestablish paternity "in no event later than five years after the child's birth."  In a case with markedly similar facts, this Court held the statute of limitations applies solely to the original action to disestablish paternity and may not be used in a subsequent paternity action as a shield by a putative biological father to avoid his duty to support his children. *In re K.B.*, 490 N.W.2d 715, 717–18 (N.D.1992);  *see also Rydberg v. Ryd-*

*berg,* 2004 ND 73, ¶¶ 15, 18, 678 N.W.2d 534.

[¶ 7] In *K.B.,* a presumed father was declared not to be the father in proceedings thirteen years after the child's birth, when genetic testing established he was not the biological father. 490 N.W.2d at 716. When the mother then identified "Gary" as the father and the Social Service Board brought a paternity action against him, Gary argued the ex-husband was still the presumed father and the prior proceedings disestablishing paternity were barred by the statute of limitations under N.D.C.C. § 14–17–05(1)(b). *K.B.,* at 716–17. On appeal, this Court noted the statute of limitations is an affirmative defense which is waived if not pleaded. *Id.* at 717. Here, as in *K.B.,* no party raised the statute of limitations as a defense in the prior proceedings to disestablish the presumed father's paternity. The Court in *K.B.* concluded the alleged father could not raise the statute of limitations as a defense in the subsequent paternity action:

> "Construing Section 14–17–05(*l* )(b), N.D.C.C., to provide an independent affirmative defense to putative fathers in Gary's position would be contrary to legislative intent and public policy. The overriding public policy of the Uniform Parentage Act is to protect the interests of the child. *See* Comment to Uniform Parentage Act § 6. It was not the intent of the Legislature in enacting the five-year limitation period under Section 14–17–05(*l* )(b), N.D.C.C., to provide putative biological fathers with a shield to avoid their duty to support their children."

*K.B.,* at 718.

[¶ 8] Accordingly, Adam cannot challenge the 2004 judgment disestablishing Charles's paternity based upon the statute of limitations. Therefore, when this paternity action was commenced in 2007, there was no presumed or adjudicated father. In that procedural posture, N.D.C.C. § 14–20–26(2) did not preclude genetic testing to determine whether Adam was Sara's biological father. Furthermore, since there was no presumed or adjudicated father, the district court did not err in failing to dismiss the paternity action against Adam. Under the circumstances in this case, the paternity action against Adam was properly conducted in accordance with the requirements of N.D.C.C. ch. 14–20.

### IV

[¶ 9] Adam argues the district court erred in ordering that he owed child support effective November 2006, when Sara began receiving governmental assistance. He contends child support could only be ordered commencing in May 2007, when he was served with the summons and complaint in the paternity action.

[¶ 10] Adam premises his argument on his contention "that these subsequent proceedings are basically a motion to modify the original child support judgment" against Charles in the 1996 divorce. Adam thus relies upon our caselaw indicating that, when a motion is made to modify an existing child support obligation, the date of the motion will ordinarily be the appropriate date for any modification to take effect. *See, e.g., Geinert v. Geinert,* 2002 ND 135, ¶¶ 8–10, 649 N.W.2d 237.

[¶ 11] This is not a motion to modify an existing child support obligation. This is a separate action brought against a different alleged father and is unrelated to the prior divorce proceedings between Amanda and Charles. It is an original action brought to establish the parentage of the alleged father and to set an initial child support obligation for him. Our prior cases addressing modification of an existing child support obligation do not apply in this case.

[¶ 12] Under N.D.C.C. § 14–08.1–01, "[a] person legally responsible for the support of a child under the age of eighteen years who is not subject to any subsisting court order for the support of the child and who fails to provide support, subsistence, education, or other necessary care for the child ... is liable for the reasonable value of physical and custodial care or support which has been furnished to the child by any person, institution, agency, or county social service board." This statute has been construed to authorize an award of past due child support and to specifically authorize an award of past due child support in a paternity action as reimbursement for governmental assistance provided to the child before the paternity action was commenced. *See, e.g., Richter v. Houser,* 1999 ND 147, ¶¶ 15–17, 598 N.W.2d 193; *Linrud v. Linrud,* 552 N.W.2d 342, 346–47 (N.D.1996); *Hobus v. Hobus,* 540 N.W.2d 158, 160, 162 (N.D. 1995). Under N.D.C.C. § 14–08.1–01, the district court had the authority to order Adam to pay child support effective from November 2006, when Sara began receiving governmental assistance.

[¶ 13] We conclude the district court did not err in awarding child support effective November 2006.

### V

[¶ 14] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The district court order is affirmed.

[¶ 15] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.